# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| NATHAN STREI, | Civil No. 12-1095 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING THE JULY 11, 2013 ORDER OF THE MAGISTRATE JUDGE** |
| DEPUTY SCOT BLAINE, INVESTIGATOR JOHN MCARTHUR, OFFICER MERLIN DEEGAN, NICHOLE MYREE HENSEN, JOSEPH MERZ, COUNTY OF BECKER, and KEVIN MILLER, | |
| Defendants. | |

Jordon S. Kushner, **LAW OFFICE OF JORDAN S. KUSHNER**, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415, for plaintiff.

Jessica E. Schwie, Leonard J. Schweich, and Vicki A. Hruby, **JARDINE, LOGAN & O'BRIEN, PLLP**, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042, for defendants Scot Blaine, Kevin Miller and County of Becker.

Richard M. Dahl, **MADIGAN, DAHL & HARLAN, PA**, 222 South Ninth Street, Suite 3150, Minneapolis, MN 55402; and Lonnie F. Bryan, **UNITED STATES ATTORNEY'S OFFICE**, Assistant Attorney General, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendants John McArthur and Merlin Deegan.

C. Nicholas Vogel, **VOGEL LAW FIRM**, 218 NP Avenue, Post Office Box 1389, Fargo, ND 58107; and Robert G. Manly, **VOGEL LAW FIRM**, 215 Thirtieth Street North, Moorhead, MN 56561, for defendants Nichole Myree Hensen and Joseph Merz.

Plaintiff Nathan Strei brings claims against five Defendants in this action, including tort claims against John McArthur and Merlin Deegan in both their official

capacities as White Earth tribal police officers and their personal capacities. McArthur and Deegan moved to substitute the United States as the proper defendant for the common law tort claims brought against them, pursuant to the Federal Tort Claims Act ("FTCA"). The Magistrate Judge granted the motion for substitution, and Strei objects. The Court finds that the Magistrate Judge's determination that McArthur and Deegan were acting within the scope of their employment as federal employees at the time of the events giving rise to Strei's tort claims was neither erroneous nor contrary to law. Therefore, the Court will affirm the Magistrate Judge's July 11, 2013 order.

## BACKGROUND

Strei brings various common law tort, state statutory, and federal statutory claims against Defendants. (*See* Am. Compl., Jan. 12, 2013, Docket No. 38.) These claims arise out of the November 5, 2011 arrest and removal of Strei from real property in which he claims he had a possessory right, as well as his subsequent detention and criminal prosecution related to the incident. (*Id.* ¶ 1.)

## I. THE UNDERLYING DISPUTE BETWEEN STREI AND HENSEN

Strei alleges that while he and Defendant Hensen were involved in a "significant relationship" they jointly purchased a home ("the home" or "the property"). (*Id.* ¶ 11.) The property is located within the boundaries of both the White Earth Reservation and Becker County. (Tr. at 5-6, July 23, 2013, Docket No. 63.) After Hensen terminated the relationship, Strei continued to reside in the home until Hensen filed an unlawful detainer action against Strei in Becker County District Court. (*Id.* ¶¶ 12-13.) The court dismissed

Hensen's action and refused to evict Strei from the home. (*Id.* ¶ 13.) Following the dismissal of her action, Hensen and Defendant Merz, her boyfriend at the time, allegedly changed the locks on the home and posted no trespassing signs on the property. (*Id.* ¶ 14.) Hensen and Merz also began contacting law enforcement requesting that they remove Strei from the property. (*Id.* ¶¶ 15-16.) In October 2011, Hensen and Merz allegedly met with Deegan, an officer with the White Earth Police Department, and informed Deegan that Strei was trespassing. (*Id.* ¶ 17.) In response, Deegan and another officer came to the property, but left without taking further action after Strei showed the officers documentation establishing his claim of ownership in the property. (*Id.*)

## II.      STREI'S ARREST

On November 1, 2011, White Earth Police Investigator McArthur received an email from Becker County Deputy Scot Blaine regarding the property. (Exs. Regarding Mem. in Supp. of Substitution, Ex. 5 at 9:4-12, May 1, 2013, Docket No. 51.)[1] The email alerted McArthur that if the White Earth Police Department received a call regarding the property, they should respond and arrest Strei for misdemeanor trespassing if they found him on the property. (Substitution Ex. 6.) McArthur caused the email to be forwarded to

---

[1] Defendants McArthur and Deegan filed a document titled "Exhibit List" at docket number 51, containing nine exhibits in support of their motion for substitution. This Order will refer to each of the nine exhibits as "Substitution Ex." with the corresponding number. McArthur and Deegan filed a second document titled "Exhibit List" at docket number 57 containing two additional exhibits in support of their motion for substitution. (*See* Ex. List, May 24, 2013, Docket No. 57.) The two exhibits attached to this document shall be referred to respectively as Substitution Ex. 10 and Substitution Ex. 11.

the entire White Earth Police Department.  (Substitution Ex. 3 at 53:15-54:8; Substitution Ex. 5 at 9:17-10:4.)

On November 5, 2011, Deegan returned to the property while on duty after receiving a call from White Earth dispatch informing him that Hensen had called to report that Strei was in the home.  (Substitution Ex. 3 at 43:5-15, 44:16-23; Substitution Ex. 5 at 12:24-13:16.)  Deegan searched the home for firearms then made a phone call to McArthur to ascertain whether the directive to arrest Strei was still in effect.  (Substitution Ex. 3 at 56:3-58:7; Substitution Ex. 5 at 13:9-14:12; Am. Compl. ¶¶ 19-20.)  McArthur called Blaine who confirmed that the information communicated in the November 1 email was still accurate and that Strei could be placed under arrest and taken into custody.  (Substitution Ex. 5 at 14:13-20.)  McArthur then called Deegan, and directed him to proceed with an arrest if Strei refused to leave the property.  (*Id.* at 15:1-18; Substitution Ex. 3 at 60:23-61:11.)

Strei refused to leave the property and Deegan arrested Strei and transported him to the Becker County Jail.  (Am. Compl. ¶¶ 19-20; Substitution Ex. 3 at 60:4-11, 63:7-64:19, 66:13-14.)  Deegan later wrote a report of the incident for the White Earth Police Department files.  (Substitution Ex. 4.)

## III.    SCOPE OF WHITE EARTH POLICE DEPARTMENT AUTHORITY

### A.    Cooperative Law Agreement

The White Earth Reservation ("the Reservation") is authorized to enforce Minnesota criminal laws on the Reservation pursuant to a Cooperative Law Enforcement

Agreement ("CLEA") with Becker County. (Substitution Ex. 9 at 1.) The purpose of the CLEA is to "provide for mutual aid and cooperation between the Reservation and the County relating to enforcement of the laws of the State of Minnesota, and laws of the White Earth Reservation, on that portion of the White Earth Reservation that lies within Becker County." (*Id.*) Under the CLEA, the Reservation "agrees to be subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties arising out of a law enforcement agency function." (*Id.* at 1, 5.) Additionally, with respect to a White Earth police officer's scope of employment, the CLEA provides that:

> Any peace officer acting under this agreement shall, at all times, be considered to be an employee of his or her employing agency. Any peace officer acting under this agreement shall continue to be covered by his or her employing agency for purposes of wages, benefits, workers compensation, unemployment compensation, disability, other employee benefits, and civil liability purposes.

(*Id.* at 4-5.)

## B.    638 Contract

The Bureau of Indian Affairs ("BIA") funds the White Earth Police Department through a contract ("the 638 Contract") between the federal government and the White Earth Band of Chippewa, pursuant to the Indian Self Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. §§ 450f *et seq.*[2] (Substitution Ex. 10.) Specifically, annual funding agreements for the 638 Contract indicate that in 2011 and

---

[2] Contracts entered into under the Act are referred to as 638 contracts because they are authorized by Public Law 93-638. *See* 25 U.S.C. § 450h.

2012 the BIA funded various "Programs, Services, Functions and Activities Assumed by the Tribe" including "Law Enforcement." (Substitution Ex. 10 at 2-3; Substitution Ex. 11 at 2-3.)

### C.    Employment of McArthur and Deegan

At the time of Strei's arrest, McArthur's and Deegan's job duties each involved enforcing Federal, State and Tribal laws within the jurisdiction of the White Earth Police Department. (Substitution Ex. 2.) Both McArthur and Deegan were required to answer duty calls on a twenty-four hour per day, seven days a week basis, in case of emergencies. (*Id.*)

## II.    MOTION FOR SUBSTITUTION

After Strei filed the present lawsuit, McArthur and Deegan sought certification from the United States Attorney that they were acting within the scope of their employment at the time of Strei's arrest and therefore were entitled to representation by the Department of Justice, pursuant to the 638 Contract. (*See* Substitution Ex. 2.) In support of their application, McArthur and Deegan provided, among other documents, the 638 Contract, the CLEA, and a letter from Randy Goodwin, the White Earth Chief of Police, concluding that McArthur and Deegan were acting within the scope of their employment at the time of Strei's arrest. (*See id.*)

The United States Attorney certified that McArthur and Deegan were acting within the scope of their federal employment under the 638 Contract at the time of Strei's

arrest. (Mem. in Supp. of Substitution at 4, May 1, 2013, Docket No. 50.)[3]  On May 1, 2013, McArthur and Deegan brought a motion to substitute the United States as defendant for the tort claims brought against them. (Mot. for Substitution, May 1, 2013, Docket No. 48.)  McArthur and Deegan argued that substitution was required pursuant to the FTCA, because the United States is the exclusive proper defendant for tort claims arising out of a federal employee's conduct that occurs while the employee is acting within the scope of his employment. (Mem. in Supp. of Substitution at 2-3.)

In his responsive memorandum, Strei challenged the existence of a 638 Contract between the United States and the White Earth Band. (Mem. in Resp. to Mot. to Substitute at 2-3, May 21, 2013, Docket No. 54.)  Accordingly, McArthur and Deegan sought permission to file a reply to introduce evidence of the 638 Contract. (Mot. for Reply, May 24, 2013, Docket No. 55.)  The Magistrate Judge permitted them to file a reply on or before May 28, 2013. (Order, May 24, 2013, Docket No. 58.)  The Magistrate Judge also ordered that "[a]ny party, including Plaintiff, wishing to respond to Defendants' reply shall file their surreply by 5:00 p.m. on May 31, 2013," and rescheduled the hearing on the motion to substitute for June 4, 2013. (*Id.*)  McArthur and Deegan filed a reply, including the 2011 and 2012 annual funding agreements for the 638 Contract. (*See* Exhibit List, May 24, 2013, Docket No. 57.)  No other party filed any additional materials.

---

[3] Defendants have provided no documentation to the Court of the United States Attorney's certification.  Strei does not dispute, however, that the certification occurred.

## III.    THE MAGISTRATE JUDGE'S RULING

The Magistrate Judge granted the motion for substitution.  (Order, July 11, 2013, Docket No. 61.)  The Magistrate Judge began by determining that the motion was timely under the Court's pretrial scheduling order as well as the statute governing substitution under the FTCA, which requires substitution of the United States in certain circumstances "at any time before trial."  (*Id.* at 6-7); *see* 28 U.S.C. § 2679(d)(4).  The Magistrate Judge also rejected Strei's argument that he would be prejudiced without an opportunity to conduct additional discovery.  (Order at 7.)  The Magistrate Judge reasoned that although the motion for substitution had been filed a month prior to the close of discovery, Strei had at no point sought an extension for discovery or requested any discovery materials related to the motion.  (*Id.*)

With respect to substitution, the Magistrate Judge determined that it was proper to substitute the United States for the common law tort claims against McArthur and Deegan.  (*Id.* at 20.)  First, the Magistrate Judge determined that McArthur and Deegan were federal employees pursuant to the 638 Contract.  (*Id.* at 9-13.)  The Magistrate Judge then concluded that McArthur and Deegan were acting within the scope of their employment as members of the White Earth Tribal Police during the events giving rise to Strei's claims.  (*Id.* at 14-20.)  Additionally, the Magistrate Judge concluded that the existence of the CLEA and the Reservation's waiver of sovereign immunity for claims arising out of the CLEA were irrelevant to the issue of substitution.  (*Id.* at 8-9.)

**DISCUSSION**

# I.   STANDARD OF REVIEW

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). The Court will reverse such an order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 554, 556 (D. Minn. 2008) (internal quotation marks omitted).

# II.   SUBSTITUTION

## A.   Substitution Under the FTCA

Under the FTCA, the United States is the only proper defendant in an action where a federal employee is sued based on acts or omissions that occurred while the employee was acting within the scope of his or her employment. 28 U.S.C. § 2679(b)(1); *see also Anthony v. Runyon*, 76 F.3d 210, 212-13 (8th Cir. 1996) ("[A]n action against the United States is the only remedy for injuries caused by federal employees acting within the scope

of their employment.").[4]  The purpose of this provision is "to shield covered employees

not only from liability but from suit" and to place the "cost and effort of defending the

lawsuit . . . on the Government's shoulders."  *Osborn v. Haley*, 549 U.S. 225, 248, 252

(2007).

A covered employee who is sued is required to inform the appropriate Federal

agency of the suit.  28 C.F.R. § 15.2(b); 28 U.S.C. § 2679(c).[5]  After receiving a variety

of information about the suit, the United States Attorney is then "authorized to make the

statutory certification that the covered person was acting at the time of the incident out of

which the suit arose under circumstances in which Congress has provided by statute that

the remedy provided by the Federal Tort Claims Act is made the exclusive remedy."  28

C.F.R. § 15.4(b); *see also* 28 U.S.C. § 2679(d)(1).  Once the statutory certification has

been made "any civil action or proceeding commenced upon such claim in a United

_____

[4] An action may be maintained, however, against an individual federal employee where the action is "brought for a violation of the Constitution of the United States" or "brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized."  28 U.S.C. § 2679(b)(2).  Because McArthur and Deegan seek substitution of the United States only with respect to Strei's common law tort claims and not the claims brought under 42 U.S.C. § 1983, this exemption to the exclusivity of the United States as a defendant is not implicated here.

[5] The certification process for purposes of the FTCA deals with both federal employees and covered persons.  *See* 28 C.F.R. § 15.1.  A covered person is "any person other than a Federal employee . . . as to whom Congress has provided by statute that the remedy provided by 28 U.S.C. 1346(b) and 2672 is made exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against such person."  *Id.* § 15.1(b)(3).  As explained more fully below, the case here deals with tribal members that seek FTCA protection pursuant to their actions taken under the 638 Contract on behalf of the Bureau of Indian Affairs.  "[T]ribal members do not become federal employees when operating under [638] contracts," instead "they are 'covered employees' and are treated as federal employees for purposes of the FTCA."  *Dinger v. United States*, Civ. No. 12-4002, 2013 WL 1001444, at *2 (D. Kan. Mar. 13, 2013); *see also Big Crow v. Rattling Leaf*, 296 F. Supp. 2d 1067, 1068-69 (D.S.D. 2004).  Accordingly, the Court cites to the regulations governing "covered" rather than "federal" employees.

States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1).

Upon a motion for substitution, the certification "although subject to judicial review, is prima facie evidence that the employee's challenged conduct was within the scope of employ." *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991). A plaintiff opposing the certification bears the burden of "com[ing] forward with specific facts rebutting the government's scope-of-employment certification." *Id.*; *see also Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993) ("The Attorney General's decision regarding scope of employment certification is conclusive unless challenged. Accordingly, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." (citation and footnote omitted)).

### B.    Substitution Under 638 Contracts

Tribal employees are covered employees for purposes of the FTCA under certain circumstances. *See, e.g. FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir. 1995). Under the ISDEAA, tribes may enter into 638 (or self-determination) contracts with the United States to "assume the administration of programs formerly administered by the federal government on behalf of the tribe." *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 670 (8th Cir. 2008) (citing 25 U.S.C. § 450f(a)(1)). Tribal officers are considered covered employees for purposes of the FTCA if they are "'acting within the scope of their employment in carrying out'" such a contract. *FGS*

*Constructors, Inc.*, 64 F.3d at 1234–35 (quoting Pub. L. No. 101-512, Title III, § 314, 104 Stat. 1959 (codified at 25 U.S.C. § 450f notes)); *see also Hinsley*, 516 F.3d at 672 ("Tort claims against tribes, tribal organizations, or their employees, that arise out of the tribe or tribal organization carrying out a self-determination contract, are considered claims against the United States and are covered to the full extent of the FTCA.").

Courts generally employ a two-part analysis when determining whether a particular defendant, subject to a 638 contract, is covered under the FTCA. *See, e.g.*, *Allender v. Scott*, 379 F. Supp. 2d 1206, 1211 (D.N.M. 2005); *see also Murray ex rel. Murray v. United States*, 258 F. Supp. 2d 1006, 1009 (D. Minn. 2003). The first inquiry is whether the defendant is a federal employee and focuses primarily on the scope of the 638 contract and whether the contract authorized the acts or omissions forming the basis of the underlying claim. *Allender*, 379 F. Supp. 2d at 1211-12. If a court concludes that the claim at issue "resulted from performance of functions under [a 638 contract] and that [d]efendants should be deemed federal employees" the second inquiry goes on to examine whether defendants were acting within the scope of their employment.[6] *Id.* at 1211, 1218. The scope of employment is determined using Minnesota state law, *see Allender*, 379 F. Supp. 2d at 1211; *see also Lawson v. United States*, 103 F.3d 59, 60 (8th Cir. 1996), and involves a number of factors, including whether the employee's

---

[6] Some courts combine the two inquiries, focusing generally on whether the employee was acting within the scope of his employment under the relevant contract. *See, e.g.*, *Big Crow v. Rattling Leaf*, 296 F. Supp. 2d 1067, 1069-70 (D.S.D. 2004) (determining that an employee was a covered employee for purposes of the FTCA by examining whether the employee was acting within the scope of his employment in carrying out functions authorized by the 638 contract at the time of the underlying incident).

conduct was reasonably related to his employment and whether it furthered the employer's interests, *Murray*, 258 F. Supp. 2d at 1012.

### C.     Strei's Objection

Strei's objections to the Magistrate Judge's conclusion that substitution of the United States was appropriate focus on the first substitution inquiry – whether McArthur and Deegan were federal or covered employees at the time of Strei's arrest.[7]   (Pl.'s Objections to Magistrate Judge's Order of July 11, 2013 ("Obj.") at 6-9, July 25, 2013, Docket No. 64.)   Specifically, Strei argues that McArthur and Deegan could not have been acting as covered employees pursuant to the 638 Contract because they were acting "at the behest of County law enforcement" under the CLEA and enforcing state law at the time of the arrest.  (*Id.* at 6.)

Under the ISDEAA Indian tribes can receive funding to operate any program that the Secretary of the Interior would be authorized to operate with regard to Indian tribes. *See* 25 U.S.C. § 450f(a); *cf. United States v. Roy*, 408 F.3d 484, 490 (8th Cir. 2005) (explaining that the Secretary could delegate its law enforcement power provided by 25 U.S.C. § 2802(a) through a 638 contract); *Allender*, 379 F. Supp. 2d at 1217 (same). With respect to law enforcement, the Secretary, through the BIA, "is charged with providing or assisting in the provision of law enforcement services on Indian lands." *Roy*, 408 F.3d at 489 (citing 25 U.S.C. § 2802(a)).  In carrying out this responsibility "the

---

[7] Strei does not dispute, and the Court's independent review of the record confirms, that at the time of his arrest both McArthur and Deegan were acting within the scope of their employment as White Earth Police Officers, thus satisfying the second substitution inquiry.

Secretary 'may charge [Bureau] employees with a broad range of law enforcement powers.'" *Id.* (quoting *United States v. Schrader*, 10 F.3d 1345, 1350 (8th Cir. 1993)). Specifically, the Secretary may authorize Bureau employees to "when requested, assist (with or without reimbursement) any Federal, tribal, State, or local law enforcement agency in the enforcement or carrying out of the laws or regulations the agency enforces or administers." 25 U.S.C. § 2803(8); *see also Allender*, 379 F. Supp. 2d at 1212. Because the Secretary has the authority to enforce state law pursuant to a request for a state or local law enforcement agency, that authority can be delegated to an Indian tribe pursuant to a 638 Contract. *See Schrader*, 10 F.3d at 1350. Courts have construed 638 contracts that broadly delegate law enforcement functions to an Indian Tribe to include a delegation of the ability to enforce state law, even where the contract does not expressly provide for such enforcement. *See Roy*, 408 F.3d at 490 (finding that a 638 contract stating that a police department would provide "law enforcement services on all lands held by the Tribe" was sufficient to delegate all of the BIA's law enforcement responsibility to that department).

Here, the United States Attorney has certified that McArthur and Deegan were acting within the scope of their employment as covered employees at the time of Strei's arrest. Strei therefore bears the burden of coming forward with specific facts to rebut this certification. *See Brown*, 949 F.2d at 1012. To rebut certification, Strei points to the existence of the CLEA, arguing that McArthur and Deegan were acting exclusively on behalf of Becker County and consequently outside the scope of the 638 Contract at the time of Strei's arrest. Additionally, Strei argues that the record does not contain evidence

that the specific activities at issue were carried out pursuant to the 638 Contract, explaining "[i]t is highly questionable that the federal government would be providing funding through the BIA for tribal officers to do police work on behalf of a county, enforcing state laws involving a dispute between non-tribal members on a matter that does not affect the Tribe." (*Id.* at 7.)

Neither of Strei's arguments suffices to rebut the certification that McArthur and Deegan were acting pursuant to the 638 Contract at the time of his arrest. Although the entirety of the 638 Contract has not been produced, the United States submitted the annual funding contracts between the White Earth Band and the United States for 2011 and 2012. Those funding agreements show that "law enforcement" is funded in the 638 Contract through the BIA. Because the 638 Contract contains no limitations on this function, the Court concludes that the 638 Contract delegates to the White Earth Tribe the authority "to operate any program the Secretary would be authorized to operate." *Allender*, 379 F. Supp. 2d at 1217. This delegation includes the authority to enter into cooperative law agreements and assist state and local police departments with the enforcement of state and local law. *See* 25 U.S.C. § 2803(8); *Schrader*, 10 F.3d at 1350. Strei has identified no facts or legal authority that would prevent the White Earth Tribe from simultaneously carrying out its responsibilities under the 638 Contract and the CLEA. *See Walker v. Chugachmiut*, 46 F. App'x 421, 425 (9th Cir. 2002) (finding that plaintiff had not met her burden to rebut the United States Attorney's certification where plaintiff "merely argues that [defendant] could not have been acting pursuant to the [self-determination contract] . . . because [defendant] was also a party to other non-self-

determination contracts. [Defendant]'s involvement in other contracts does not affect its

ability to act in furtherance of the [self-determination contract] by firing [plaintiff]."); *Cf*

*Big Crow*, 296 F. Supp. 2d at 1070 ("He was doing exactly what the Tribe had promised

to do and what the BIA had required the Tribe to do under the law enforcement services

contract. Under the undisputed facts of this case, it is legally immaterial that he was paid

pursuant to one contract rather than another."). Indeed, the CLEA itself specifically

provides that McArthur and Deegan did not become County employees when they were

carrying out responsibilities pursuant to the CLEA. Accordingly, the Court concludes

that the Magistrate Judge correctly found that McArthur and Deegan were acting as

covered employees under the FTCA at the time of Strei's arrest.[8]

---

[8] Strei also argues that even if Deegan and McArthur are covered employees for purposes of the FTCA they waived any federal immunity they might have in the CLEA. The CLEA provides that the Reservation agrees to be subject to liabilities for the torts of its officers committed within the scope of their duties under the CLEA and "waives its sovereign immunity with respect to claims arising out of this liability to the same extent as a municipality under Chapter 466 of Minnesota laws." (Substitution Ex. 9 at 1.) First, as highlighted by the conditional nature of the argument itself, Strei's argument is irrelevant to the question of whether Deegan and McArthur were acting in the scope of their employment under the 638 Contract, and therefore has no bearing upon whether the United States must be substituted as the appropriate party under the FTCA. Second, only Congress has the authority to waive the United States' sovereign immunity. *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2013). Therefore any waiver by the Reservation of its own sovereign immunity would have no bearing on whether the United States in this case would be entitled to immunity. Finally, as a practical matter, Strei's argument is nonsensical. The provision of the FTCA pursuant to which the United States seeks to be substituted is itself a waiver of the United States' federal immunity. *See id.* ("In 1946, Congress passed the [FTCA], a limited waiver of the United States's sovereign immunity, to permit persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court."). Because the FTCA itself waives the United States' sovereign immunity, it is unclear why an attempted waiver of that same immunity (to the extent the CLEA could be interpreted as such) by McArthur and Deegan would alter the analysis in this case. Because any possible waiver of immunity in the CLEA does not impact the substitution analysis, the Court declines to make any determination about the scope or enforceability of such a waiver.

## III.    TIMELINESS OF MOTION FOR SUBSTITUTION

Strei also objects to the Magistrate Judge's determination that the motion for substitution was timely.  Specifically, Strei argues that the motion was brought after the November 1, 2012 deadline in the pretrial scheduling order for motions seeking to add parties.  If the Court determines that the motion was timely, Strei requests that he be granted a three-month extension of time for conducting discovery before the Court rules on the merits of the motion.

The Court finds that the motion for substitution was timely.  The statute governing substitution of the United States for purposes of the FTCA sets no time limit for the bringing of a motion to substitute.  *See* 28 U.S.C. § 2679.  Rather, the statute provides that if the United States Attorney refuses to certify a defendant as acting within the scope of his employment the defendant may petition the court "at any time before trial" to certify that the defendant was acting within the scope of his employment and substitute the United States as the party defendant.  *Id.* § 2679(d)(3).  Additionally, the statute provides that if the underlying lawsuit has been filed in state court, upon certification the case shall be removed to federal court "at any time before trial" and "the United States shall be substituted as the party defendant."  *Id.* § 2679(d)(2).  These two provisions suggest that substitution of the United States is required at any time prior to trial.  Strei has not identified, and the Court has not located, any legal authority that limits the ability of defendants to move to substitute the United States as the party defendant at any time before trial. Here, McArthur and Deegan moved for substitution on May 1, 2013, well in advance of the trial ready-by-date of December 6, 2013.  (Second Am. Pretrial

Scheduling Order at 5, Apr. 24, 2013, Docket No. 47.)  Therefore, the Court concludes that the motion was timely under the statute governing substitution.

The Court must next determine whether the motion for substitution was untimely under second amended pretrial scheduling order.  The scheduling order provides that "all Motions which seek to amend the pleadings or add parties must be filed and the Hearing thereon completed on or before November 1, 2012." (*Id.* at 2.)[9]  The order also provides "[t]hat all other nondispositive Motions shall be filed and the Hearing thereon completed prior to July 1, 2013."  (*Id.*)  Even assuming that the motion for substitution falls generally within the category of orders seeking to "add parties,"[10] the Court concludes that any untimeliness under this provision does not prevent the Court from considering the motion on the merits.  First, the motion to substitute is one governed by a statutory procedure that makes substitution of the United States mandatory if the defendants in question are found to have been acting as covered employees under the FTCA.  *See* 28 U.S.C. § 2679(d)(1) ("Upon certification . . . that the defendant employee was acting within the scope of his office or employment at the time of the incident . . . the United

---

[9] The Magistrate Judge characterized the motion to substitute as one seeking to "amend the pleadings or add parties," but found the motion to be timely after citing to the deadline of July 1, 2013.  (Order at 6, July 11, 2013, Docket No. 61.)  As explained above, the scheduling order requires motions to "amend the pleadings or add parties" to be filed and heard by November 1, 2012, not July 1, 2013.  Therefore, if the motion to substitute was a motion to amend the pleadings or add parties, it would have been untimely.

[10] Courts have split on whether adding a party and substituting a party are distinct concepts for purposes of applying several of the Federal Rules of Civil Procedure.  *See, e.g.*, *Telesaurus VPC, LLC. v. Power*, Civ. No. 07-1311, 2011 WL 5024239, at *4-*5 (D. Ariz. Oct. 21, 2011) (collecting cases discussing the difference between adding or substituting a party for purposes of relation back under Rule 15); *In re Polo Builders*, 374 B.R. 638, 643 (Bankr. N.D. Ill. 2007) (collecting cases discussing whether Rule 21 applies to substitutions or solely to dropping or adding parties).

States **shall** be substituted as the party defendant." (emphasis added)).  The same statute making substitution mandatory provides that it can occur at any time before trial.  *See id.* § 2679(d)(2)-(3).  Therefore, it is unlikely that the Court could or should interpret the scheduling order to bar such a motion, even if filed outside the time period for adding parties.

Second, the Court has the discretion to modify a scheduling order or consider untimely motions "for good cause."  Fed. R. Civ. P. 16(b)(4); *Valles v. Gen-X Echo B., Inc.*, Civ. No. 13-0201, 2013 WL 5832782, *3 (D. Colo. Sept. 27, 2013) (using the Rule 16(b)(4) good cause standard to determine whether to hear an untimely motion to amend the pleadings or add parties).  "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (internal quotation marks omitted).  Here, McArthur and Deegan indicated that they began the process of seeking certification from the United States Attorney within sixty days after Strei filed the instant lawsuit.  (Tr. at 9-10, July 23, 2013, Docket No. 63.)  The certification process involves gathering numerous documents and a review process by various government agencies that can be lengthy.  (*Id.*)  Strei has not disputed these representations.  The nature of the certification process and the diligence with which McArthur and Deegan sought such certification satisfies the good cause standard here, which provides the Court with authority to consider the otherwise potentially untimely motion.

Additionally, Strei has argued generally that he will suffer prejudice if the Court considers the motion for substitution at this stage of the litigation.  *See Sherman*, 532

F.3d at 717 (explaining that prejudice can be a relevant factor under Rule 16(b)(4) good cause analysis). The Court finds that Strei has not demonstrated a risk of prejudice. Although the motion for substitution was filed approximately one year after this lawsuit was commenced, at the time the motion was filed discovery had not yet closed and no dispositive motions had been filed. This suggests that Strei has ample time to readjust his litigation strategy to accommodate the substitution. Additionally, Strei cannot demonstrate prejudice due to the late filing of the motion for substitution, because in the absence of such a motion, Strei would have no claims against McArthur and Deegan. In other words, if the United States is not permitted to be substituted as a party here, the Court would be required to dismiss the common law tort claims against McArthur and Deegan that arise out of their federal employment. *See Forrest City Mach. Works, Inc. v. United States*, 953 F.2d 1086, 1087 (8th Cir. 1992) ("[B]ecause the FTCA is an exclusive remedy for torts committed by federal employees acting within the scope of their employment, if recovery is not available against the United States . . . it is not available at all." (internal quotation marks omitted)).

Finally, Strei has requested, in the alternative, that he be granted three additional months of discovery. The Court finds that the Magistrate Judge's denial of Strei's request was neither clearly erroneous nor contrary to law because Strei has not identified any discovery that he would do in the next three months that he could not have done in the month after the motion for substitution was filed during which the discovery period remained open. (*See* Second Am. Scheduling Order at 2 (providing that the discovery period terminates on June 1, 2013).) For example, Strei argues that had he known earlier

about the motion for substitution he "would have also served document requests to obtain more evidence regarding the nature of the contracts in question." (Obj. at 12.) It is unclear why Strei could not have served such a document request after the motion for substitution was filed. The Magistrate Judge also provided Strei with an opportunity to file an additional surreply brief in opposition to the motion, which Strei did not do. Additionally, Strei could have moved for a modification of the discovery timeline after the motion for substitution was filed. Finally, in a similar circumstance, the Eighth Circuit denied a plaintiff's request for additional discovery where the plaintiff had failed to "come forward with any evidence contradicting the government's scope-of-employment certification" to rebut the United States Attorney's certification. *Forrest City Mach. Works*, 953 F.2d at 1088. Here, Strei has deposition testimony from each Defendant, police reports of the incident, information about the scope of McArthur's and Deegan's employment, and has failed to identify any evidence contradicting the United States Attorney's certification. Accordingly he has demonstrated no entitlement "to probe the basis for certification in discovery." *Id.* (internal quotation marks omitted). Therefore, the Court will affirm the Magistrate Judge's denial of Strei's request for further discovery, and will substitute the United States as the party defendant for the common law tort claims asserted against McArthur and Deegan.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket No. 64] and **AFFIRMS** the Magistrate Judge's Order dated July 11, 2013 [Docket No. 61].

DATED:  December 3, 2013
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge