## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NATHAN STREI, | Civil No. 12-1095 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| DEPUTY SCOT BLAINE, INVESTIGATOR JOHN MCARTHUR, OFFICER MERLIN DEEGAN, NICHOLE MYREE HENSEN, JOSEPH MERZ, COUNTY OF BECKER, and KEVIN MILLER, | |
| Defendants. | |

Jordan S. Kushner, **LAW OFFICE OF JORDAN S. KUSHNER**, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415, for plaintiff.

Leonard J. Schweich and Vicki A. Hruby, **JARDINE LOGAN & O'BRIEN PLLP**, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042, for defendants Scot Blaine, County of Becker, and Kevin Miller.

Richard M. Dahl, **MADIGAN DAHL & HARLAN, PA**, 222 South Ninth Street, Suite 3150, Minneapolis, MN 55402; and Lonnie F. Bryan, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendants John McArthur and Merlin Deegan.

C. Nicholas Vogel, **VOGEL LAW FIRM**, 218 NP Avenue, Post Office Box 1389, Fargo, ND 58107, for defendants Nichole Myree Hensen and Joseph Merz.

This case arises out of the November 5, 2011 arrest of Plaintiff Nathan Strei at a

property Strei had purchased with his ex-girlfriend, Defendant Nichole Hensen. While

they were in a relationship the couple jointly purchased the property, but Strei later quitclaimed the property to Hensen. After the couple terminated their relationship, Strei continued to reside at the property against Hensen's wishes. Hensen unsuccessfully attempted to evict Strei by filing an action in Becker County District Court pursuant to Minnesota's landlord-tenant law. Hensen later contacted Defendant Deputy Scot Blaine at the Becker County Sheriff's Department for advice on how to remove Strei from the property. Blaine in turn contacted Defendant Assistant Becker County Attorney Kevin Miller, who advised Blaine based on the documents he received from Hensen that Strei was committing the crime of misdemeanor trespass by remaining on the property without Hensen's permission. Blaine forwarded this determination to Defendants White Earth Police Investigator McArthur and Officer Merlin Deegan. Several days later Hensen and her boyfriend Defendant Joseph Merz called the Becker County Sheriff's office to inform them that Strei was again at the property. Deegan was dispatched to the scene and arrested Strei for misdemeanor trespassing. The charges were later dropped. In a quiet title action filed by Hensen in Becker County District Court after Strei's arrest, the court determined that Hensen had sole ownership of the property and Strei had no right to or interest in the property.

Strei brings claims against all players in this drama, alleging violations of his federal constitutional rights as well as a host of common law tort claims arising out of the circumstances surrounding his arrest. The crux of most of Strei's claims is his contention that his arrest was not supported by probable cause because the dismissal of the original eviction action against him impliedly meant that he had a right to be on the property and

could not be guilty of trespassing.  Defendants have moved for dismissal or summary judgment on all of Strei's claims.  Additionally, Strei moves for dismissal or in the alternative, summary judgment on Hensen's counterclaim for damages caused by his occupancy of the property without her permission.  The Court will grant the motion to dismiss the common law tort claims against Deegan and McArthur, because Strei has failed to comply with the administrative requirements of the Federal Tort Claims Act. Additionally, because Strei's arrest was supported by probable cause and a state court has determined that Strei had no ownership interest in the property, no genuine issue of fact remains regarding any of the Defendants' liability, and the Court will grant Defendants' motions for summary judgment in their entirety.  Finally, the Court finds that Hensen has alleged sufficient facts to state a claim for trespass, and will therefore deny Strei's motion.

## BACKGROUND

### I.   PURCHASE OF THE CABIN

In August 2008, Hensen and Strei were involved in a romantic relationship. (Second Aff. of Vicki A. Hruby, Ex. 17 (Dep. of Nathan Strei ("Strei Dep. A") 17:1-3, 23:8-16), July 31, 2013, Docket No. 74.)[1]  On August 29, 2008, Hensen and Strei jointly purchased a lake cabin ("the Property," or "the Cabin,") located on East Jugglar Road in Becker County, Minnesota.  (Second Hruby Aff., Ex. 1; *id.*, Ex. 18 (Dep. of Nichole

---

[1] Unless otherwise noted, references to page numbers of parties' exhibits in this Order refer to the CMECF pagination.

Hensen ("Hensen Dep. A") 10:13-20).)  The Property was conveyed by warranty deed to "Nichole M. Hensen and Nathan C. Strei" as grantees.  (Second Hruby Aff., Ex. 1; Hensen Dep. A 12:8-20.)  Strei and Hensen financed the purchase of the Property through a $236,000 loan from a bank and a $42,000 interest-only note from the seller.  (First Aff. of Nichole Myree Hensen ¶ 2, July 26, 2013, Docket No. 68; Aff. of Richard M. Dahl, Ex. B (Dep. of Nathan Strei ("Strei Dep. B") 166:15-23), July 31, 2013, Docket No. 81.) Additionally, Strei and Hensen each made down payments of $2,500.  (Hensen Dep. A 13:10-17; Strei Dep. B 166:6-11.)

Before purchasing the Property, Strei and Hensen set up a joint account out of which to make payments on the mortgage and other costs of owning the Property. (Hensen Dep. A 12:17-25.)   Hensen testified that she and Strei had a verbal understanding that they were each to contribute half of the costs associated with the Property.  (*Id.* 12:8-20.)  Strei testified that he and Hensen discussed that Strei would not always contribute a one-half share due to his other financial obligations.  (Strei Dep. B 167:4-19; Decl. of Nathan Strei, Ex. A ¶ 7, Sept. 30, 2013, Docket No. 104.)

Initially, Strei and Hensen made relatively equal contributions to the joint account. (First Hensen Aff. ¶ 3; Aff. of C. Nicholas Vogel, Ex. E (Dep. of Nichole Hensen ("Hensen Dep. B") 154: 2-22), July 26, 2013, Docket No. 69; Strei Dep. B 167:20-23.) In December 2008, due to financial difficulties, Strei began to contribute substantially less money than Hensen.  (First Hensen Aff. ¶ 4; Hensen Dep. B 154:23-155:7; *see* Strei Dep. A 173:23-174:1.)

## II.   QUITCLAIM DEED

On May 19, 2010, Strei executed a quitclaim deed in Hensen's favor, conveying all of his interest in the Property to her.  (Second Hruby Aff., Ex. 2; Hensen Dep. A 14:14-18; Strei Dep. A 77:10-22.)  Hensen asked Strei to execute the quitclaim deed "[b]ecause he was unable to uphold his end of the purchase" and there was some concern that the Property would be subject to a lien due to issues with a mortgage on another property of Strei's.  (Hensen Dep. A 15:18-16:14, 18:12-19:1, 158:12-24; *see* Strei Dep. B 25:23-27:20.)  The quitclaim deed was recorded on May 25, 2010.  (Second Hruby Aff., Ex. 2.)

Before executing the quitclaim deed, Strei and Hensen had a conversation in which Hensen indicated that she would agree to have Strei's name put back on the deed if he was able to resume contributing an equal share to the costs of the Property.  (Hensen Dep. A 17:6-18:9.)  Strei contends that the quitclaim deed was intended to be temporary until the mortgages on his other property were satisfied.  (Strei Decl. ¶ 5, Ex. A ¶ 13, Ex. C.)

## III.   DISPUTE OVER STREI'S OCCUPANCY OF THE PROPERTY

Strei and Hensen's relationship began to deteriorate in the spring of 2011. Between May and July 2011 Strei was living part time at the Cabin and part time at Hensen's home in Fargo.  (Hensen Dep. A 24:6-25:1.)  In July Hensen "threw him out" of her Fargo home.  (*Id.* 22:7-23:17; Strei Dep. B 180:19-25.)  Hensen changed the locks on her home and notified Strei by letter that she had removed his belongings and given

them to a friend of Strei's.  (Hensen Dep. A 22:7-23:20, 25:2-26:4; Strei Dep. B 181:12-

15; Vogel Aff., Ex. M at 37.)   After the break-up, Strei began staying at the Cabin full

time.  (Hensen Dep. A 26:16-18; Decl. of Jordan S. Kushner, Ex. 1 (Dep. of Nathan Strei

("Strei Dep. C") 198:15-24), Oct. 1, 2013, Docket No. 106.)

     In August 2011 Hensen paid off the seller's note on the Property and refinanced

the mortgage, removing Strei from the note and mortgage documents.  (Hensen Dep. B

176:4-177:5, 180:5-13; Vogel Aff., Ex. M at 47-50.)   At some point Strei learned that

Hensen had closed their joint account.  (Strei Dep. C 200:10-14.)   Strei testified that after

learning he could no longer contribute to the joint account he began to make deposits into

his savings account.   (Strei Dep. B 201:3-24.)   Strei earmarked these deposits as

payments to be applied to the Property at some future time and kept track of these

deposits in a personal ledger.  (*Id.* 202:3-17.)

     In the summer of 2011 Hensen also began to take steps to have Strei removed

from the Property.   In July Hensen contacted the Becker County Sheriff's Department

and spoke with Scot Blaine regarding her options for having Strei removed from the

Property.  (Hensen Dep. A 28:11-29:1.)   Blaine mentioned the possibility of eviction, and

recommended that Hensen contact an attorney.   (*Id.* 29:2-9; Dahl Aff., Ex. D (Dep. of

Scot Blaine ("Blaine Dep.") 9:19-10:25, 12:17-13:7).)

     Hensen contacted an attorney, Leslie Johnson Aldrich, who sent Strei a letter

requesting that he leave the Property.  (Hensen Dep. A. 26:19-27:8; Strei Dep. C 196:9-

11; Vogel Aff., Ex. M at 51.)   The letter gave Strei "notice that should you go onto any of

Nichole's real property she will call law enforcement as you are not authorized,

privileged or licensed to be there" and requested that Strei "vacate the lake cabin forthwith as you have violated the terms of your agreement."  (Vogel Aff., Ex. M at 51.) Strei did not leave the Property in response to the letter.

## A.     Eviction Action

After sending Strei the letter, Hensen's attorney brought an eviction action pursuant to Minn. Stat. § 504B.321 on Hensen's behalf against Strei.[2]  (Hensen Dep. A 30:21-23; Second Hruby Aff., Ex. 5.)  In the complaint, Hensen was described as the "landlord" of the Property, and indicated that she had leased the premises to Strei via an oral agreement.  (Second Hruby Aff., Ex. 5.)  Hensen checked a box indicating that she sought eviction because Strei had failed to pay rent, but did not fill in the blanks on the complaint form indicating the amount of rent deficiency.  (*Id.*)  The complaint read:

> Landlord seeks to have the tenant evicted for the following reasons:
>
> ☒The tenant is still in possession of above premises and has failed to pay rent for the month(s) of _____ in the amount of $_____ per month payable on the _____ day of each month for a total due of $_____.

(*Id.*)  Additionally, the complaint indicated that Hensen had complied with the notice requirements of the statute because the information regarding eviction "was known by the

---

[2] Chapter 504B of Minnesota Statutes governs the relationship between landlords and tenants and authorizes certain eviction actions.  *See* Minn. Stat. §§ 504B.281-371.  Section 504B.321, under which Hensen brought her complaint, provides that:  "To bring an eviction action, the person complaining shall file a complaint with the court, stating the full name and date of birth of the person against whom the complaint is made, unless it is not known, describing the premises of which possession is claimed, stating the facts which authorize the recovery of possession, and asking for recovery thereof."  Minn. Stat. § 504B.321, subd. 1(a).

tenant not less than 30 days before" the action was filed because "he has not been contributing his half." (*Id.*)  Strei was served with the complaint on August 8, 2011. (Kushner Decl., Ex. 8 (Dep. of Leslie Johnson-Aldrich ("Aldrich Dep.") 17:6-8).)

On August 16, 2011, a hearing was held before Becker County District Judge Peter M. Irvine on the eviction complaint.  (Second Hruby Aff., Ex. 6 at 1; Vogel Aff., Ex. H at 3.)  Both Hensen and Strei attended the hearing.  (Vogel Aff., Ex. H at 3-4.)  At the hearing the judge heard arguments about the terms of the original deed and mortgage, the quitclaim deed, and the contributions of each party to the payments on the Property. (*Id.*, Ex. H at 4-10.)  Aldrich argued that Strei should be evicted for failing to contribute half of the payments on the property.  (*Id.*, Ex. H at 6-7.)  Strei responded that there was never any landlord/tenant agreement "spoken of whatsoever" affecting the Property.  (*Id.*, Ex. H at 6.)  Strei also represented that he had "plenty of evidence that null and voids the quit claim deed because it was without consideration[] and it was done with a promise that it was to be held, and that I am an equal owner of this property as of right now." (*Id.*, Ex. H at 9.)  The judge found that eviction was inappropriate, because the circumstances did not indicate the presence of a landlord/tenant relationship, explaining:

> This is not an appropriate forum for this case.  This is not a landlord/tenant situation. . . . This is a property - - .  This is an ownership interest that ought to be in civil court. . . . We are talking about landlord/tenant situations.  Based on what you folks said, there was never a landlord/tenant relationship here.  This was a situation that was set up, regardless of what the documents say, of two people that moved into a home together.  Apparently both people are on the mortgage.  There was some expectation that there was a joint ownership interest. . . . Well, it sounds to me like there is a lawsuit here that needs to be brought by somebody, but I don't think - - , I'm not going to evict this person based on - - based on what's been represented here today.

> This is an issue of who owns the property, not an issue of who is in a
> position to evict a tenant in a landlord/tenant situation.

(*Id.*, Ex. H at 10-12.)   The judge noted that the documents referenced by the parties

would "at least raise a question as to whether or not [Strei] had an ownership interest,

equitable or otherwise" and concluded by "strongly recommend[ing]" that either Strei or

Hensen bring a lawsuit to resolve the question of ownership of the Property in "a more

appropriate forum." (*Id.*, Ex. H at 12-13.)   The judge explicitly declined to consider who

owned the Property or whether Strei might have an equitable interest in the real estate

based on representations made in connection with execution of the quitclaim deed. (*Id.*)

The Becker County Court issued findings of fact, conclusions of law, and an order

and judgment with regard to the eviction action on August 17. (Second Hruby Aff.,

Ex. 6.)   The court's findings of fact and conclusion of law consisted solely of a box

checked next to the statement: "Plaintiff has failed to prove the allegations in the

complaint." (*Id.*, Ex. 6 at 1.)   The court dismissed the case with prejudice, entering

judgment in Strei's favor. (*Id.*, Ex. 6 at 2-3.)

After the eviction complaint was dismissed, Hensen changed the locks on the

Cabin. (Kushner Decl., Ex. 2 (Dep. of Nichole Hensen ("Hensen Dep. C") 37:15-

38:12).)   Hensen left a note on the door informing Strei that he was trespassing. (Vogel

Aff., Ex. M at 4.)   In response Strei sent a letter to Hensen's attorney, Aldrich, explaining

that he had again changed the locks on the Cabin. (*Id.*, Ex. M at 5.)   He also explained

that:

> You lost the eviction order and changing the locks or any other kind of
> self-help violates the judge's order and will not work to remove me or

> my belongings from the property. I will not vacate unless you get a
> court order and you win. . . . This has to be decided in court and so far
> the court has withstood my right to property. Judge Pete Irvin[e] said I
> have an ownership claim and rights to the property and unless the court
> says otherwise I am not leaving.

(*Id.*)  Additionally, Strei indicated that he intended to set up an escrow account in which

to deposit his half of payments on the Property and that "[i]f you or your client bel[ie]ve

that I am trespassing you can call the sheriff and I will be happy to show him a copy of

Judge Pete Irvin[e]'s order and transcript from the hearing." (*Id.*)  Later, Strei reported

an attempted break-in to the Becker County Sheriff's Department after Hensen and her

boyfriend Joseph Merz attempted to gain access to the Cabin by opening the screen door

with a screwdriver.  (Vogel Aff., Ex. I at 2; Hensen Dep. C 50:7-51:8.)  Deputy Sweere

from the Becker County Sheriff's Department spoke with both Strei and Merz about the

incident.  (Vogel Aff., Ex. I at 2.)  Sweere told Merz that "until they get everything

settled through the courts [Strei and Hensen] both have rights to the property." (*Id.*)

## B.    Becker County Investigation

Hensen again contacted Blaine.  (Blaine Dep. 15:2-8.)  Hensen expressed her

frustration that the eviction action had been unsuccessful and sought advice about what

other steps she could take.  (*Id.* 15:13-18.)  Blaine requested more information about

Hensen's claim of ownership to the Property, and Aldrich sent him the quitclaim deed,

the eviction complaint, and the court order dismissing Hensen's eviction action.  (*Id.*

15:13-16:13; Hensen Dep. A 55:15-56:17; Second Hruby Aff., Ex. 7.)  Blaine asked for

the information in order to determine whether "there was a trespass action, criminal action here or not."  (Blaine Dep. 25:7-11; Vogel Aff., Ex. N at 12.)[3]

Blaine forwarded the documents to Assistant Becker County Attorney, Kevin Miller.  (Blaine Dep. 24:6-9; Second Hruby Aff., Ex. 20 (Dep. of Kevin Miller ("Miller Dep. A") 10:19-11:5).)  Miller indicated that he would review the information.  (Blaine Dep. 26:1-3.)  Miller and Blaine discussed the need for 'no trespassing' signs to be posted on a property in order to prosecute an individual for criminal trespass.  (*Id.* 26:1-17.)  At some point Hensen also visited the Becker County courthouse, where a receptionist gave her Miller's card and told her to have Aldrich call him regarding the dispute over the Property.  (Hensen Dep. A 100:2-101:4.)  Aldrich spoke with Miller and then Aldrich and/or Blaine informed Hensen that 'no trespassing' signs would need to be posted on the Property "if there was going to be a potential criminal action against any trespasser."  (Blaine Dep. 31:17-32:19; Hensen Dep. A 48:20-25, 118:6-25; Hensen Dep. C 49:5-50:3.)

---

[3]  Hensen testified that she did not bring a quiet title action after the dismissal of her eviction complaint because she "didn't feel it was necessary" as "[a]ll the legal documents were pretty obvious."  (Hensen Dep. A 43:8-11.)  Hensen also testified that after speaking with Becker County officials "trespassing came up as a very obvious solution."  (*Id.* 44:16-21.)  Hensen believed that removing Strei from the Property through a charge of trespassing would "be simpler" than bringing a quiet title action and "[a] shorter way, a cleaner way to get this taken care of."  (Hensen Dep. C 109:17-25, 110:25-111:1.)

### C.    October 21, 2011 Incident

On October 21, 2011, Hensen and Merz drove to the Property to post 'no trespassing' signs.  (Dahl Aff., Ex. E (Dep. of Merlin Deegan ("Deegan Dep.") 15:22-16:2); Second Hruby Aff., Ex. 22 (Dep. of Joseph Merz ("Merz Dep.") 54:22-55:2).)  When they arrived at the Property, they saw Strei's truck parked outside the Cabin.  (Deegan Dep. 15:22-16:6; Merz Dep. 55:21-22.)  Hensen and Merz left the Property and drove to a nearby store where they called the Becker County Sheriff's Department.  (Merz Dep. 57:15-21.)  Becker County in turn called dispatch for the White Earth Tribal Police Department.[4]  (Deegan Dep. 13:25-14:5.)

White Earth Police Officer Deegan was on duty and responded to the call, meeting Hensen and Merz at the store.  (Deegan Dep. 14:5-15:15; Merz Dep. 58:10-21; Vogel Aff., Ex. H at 2.)  Prior to responding to the call, Deegan had no knowledge of the dispute between Hensen and Strei.  (Deegan Dep. 19:23-20:8.)  At the store Hensen advised Deegan of the nature of her dispute with Strei.  (Merz Dep. 59:4-60:21.)  Hensen also advised Deegan that Strei was at the Property, had potentially been drinking, and possessed guns.  (Deegan Dep. 17:7-16.)

Due to the potential presence of firearms at the Property, Deegan requested a backup officer.  (Vogel Aff., Ex. H at 2.)  White Earth Police Officer Jamie Allen

---

[4] The White Earth Reservation is authorized to enforce Minnesota criminal laws on the White Earth Indian Reservation pursuant to a Cooperative Law Agreement with Becker County. *Strei v. Blaine*, Civ. No. 12-1095, 2013 WL 6243881, at *2 (D. Minn. Dec. 3, 2013).  The Property is located within the boundaries of both the White Earth Reservation and Becker County. *Id.* at *1.

responded to the request for backup, and Hensen, Merz, Deegan, and Allen proceeded to the Property. (*Id.*; Deegan Dep. 19:3-18, 21:2-3.) Hensen and Merz waited on the road outside the Property while Deegan and Allen approached the Cabin. (Deegan Dep. 21:9-22:5.)

Deegan knocked on the door several times and received no answer. (*Id.* 25:7-10.) After the officers informed Strei that they could see him through the window, Strei opened the door and the officers entered. (*Id.* 25:11-15, 26:17-18; Strei Dep. A 98:21-22.) Deegan explained the reason for the dispatch. (Deegan Dep. 27:1-4.) Strei told the officers that the Property was his home and produced the court order dismissing the eviction complaint. (*Id.* 27:8-28:2; Strei Dep. A 245:17-20.) Strei also testified that he showed the officers the original warranty deed and mortgage for the Property, but not the quitclaim deed or updated financial documents. (Strei Dep. A 247:2-12; Vogel Aff., Ex. G (Dep. of Nathan Strei ("Strei Dep. D") 278:23-279:16).) Deegan testified that the only document he saw was the court order dismissing the eviction complaint. (Deegan Dep. 82:6-10.)

Deegan skimmed the order and concluded based upon it and the limited information received from Hensen that the dispute "was a civil matter at that point." (*Id.* 27:22-28:17.) Deegan therefore decided not to take Strei into custody. (*Id.* 83:19-84:1.) The officers left the Property and Deegan communicated to Hensen that he believed this was a civil matter, advising her to "go back and deal with the Becker County deputy that she was dealing with and take care of this during daylight hours." (*Id.* 32:10-23.)

Deegan concluded his written report of the incident by noting "[t]his is a CIVIL MATTER for the Courts." (Vogel Aff., Ex. H. at 2.)

On October 24, 2011, Strei filed a complaint with the Becker County Sheriff's Department on the basis that Hensen had made a false report of trespassing against him. (Vogel Aff., Ex. K at 2-8.) Strei told Officer Nguyen that he had court papers proving that both he and Hensen "have a right to occupy the property." (*Id.*, Ex. K at 4.) Nguyen checked the referenced court orders, including the order and transcript from the eviction proceeding and noted in her report that there "was no court order regarding the property in the file." (*Id.*)

Also on October 24, 2011, Hensen communicated with Aldrich and Blaine regarding the events of October 21, and expressed her concern that Strei had shown the responding officers outdated documents in support of his claim of right to be on the Property. (Hensen Dep. A 57:8-59:15; Vogel Aff., Ex. M at 6.)

On October 27 Hensen returned to the Property and posted 'no trespassing' signs. (Hensen Dep. A 66:3-5.) Hensen took photos of the signs and sent them to Aldrich. (*Id.* 66:15-21.) Blaine received the photos by email and provided them to Miller. (Blaine Dep. 33:13-21.) Blaine then drove to the Property and photographed the postings himself to "make sure the postings were done properly" and "were actually at the location they're supposed to be." (*Id.* 49:6-23.) Blaine also provided these photographs to Miller. (*Id.* 49:23-50:2.)

## IV.    MILLER'S DETERMINATION THAT STREI WAS TRESPASSING

On November 1 Miller reviewed the quitclaim deed and the mortgage documents reflecting that Hensen was the sole borrower on the loan secured by the Property. (Miller Dep. A 32:8-33:2.)  Miller did not review the transcript of the eviction hearing. (Kushner Decl., Ex. 5 (Dep. of Kevin Miller ("Miller Dep. B") 18:6-11).)  Miller testified that he did not believe the eviction order was relevant to a determination of whether Strei was trespassing because "[t]hey're different venues, different burdens of proof, different information provided, different requirements." (Miller Dep. A 33:5-11.)  After reviewing these documents and the criminal trespass statute, Miller determined that Strei was violating the criminal trespass statute if he was at the Property. (Dahl Aff., Ex. G (Dep. of Kevin Miller ("Miller Dep. C") 73:8-20).)  Upon reaching this conclusion, Miller drafted an email to Blaine stating:

> We now have photographs of the posting that has taken place at the Nichole Hensen property located at 38864 E Juggler Road.
>
> At this point it appears that anyone occupying the property other than the owner, Nichole Hensen, is violating MN Stat. 609.605 Subd 1(b)(4) which states that A person is guilty of a misdemeanor if the person intentionally: occupies or enters the dwelling or locked or posted building of another, without claim of right or consent of the owner or the consent of one who has the right to give consent, except in an emergency situation;
>
> Any further questions please do not hesitate to call.

(Second Hruby Aff., Ex. 10; Miller Dep. A 30:10-15, 31:5-14.)  Blaine forwarded this email to a distribution list of sheriff's officers and also to Investigator John McArthur of the White Earth Police Department. (Blaine Dep. 60:18-61:17, 62:7-24.)  In his email

Blaine stated, "If you get a call to this residence and Strei is their [sic] arrest him and charge him with the statute below." (Second Hruby Aff., Ex. 10.)

After McArthur received the email, he and Blaine spoke on the phone. (Second Hruby Aff., Ex. 23 (Dep. of John McArthur ("McArthur Dep.") 9:13-20).) McArthur and Blaine discussed further distribution of the email to the White Earth Police officers and Blaine told McArthur that this trespassing issue had been "ongoing" and Becker County had reviewed "proper documents to prove ownership of the place." (McArthur Dep. 9:25-10:4, 11:21-12:5.) Deegan saw Blaine's email when it was forwarded to members of the White Earth Police Department. (Deegan Dep. 53:18-54:8.)

## V.     STREI'S ARREST

On November 5 Hensen contacted the Becker County Sheriff's Department and informed them that Strei was at the Property. (Hensen Dep. A 73:12-74:22.) Deegan was dispatched to respond to the call. (Deegan Dep. 43:4-15.) Deegan met Hensen on the road outside the Cabin and she informed him that she had posted "no trespassing" signs and that Strei was in the Cabin without her permission. (Vogel Aff., Ex. H at 22; Deegan Dep. 45:13-22.) Hensen also told Deegan that Strei had guns and may be drinking. (Vogel Aff., Ex. H at 22; Deegan Dep. 46:15-25.)

Deegan approached the Cabin and knocked on the door for five to ten minutes, but Strei refused to answer. (Vogel Aff., Ex. H at 22; Strei Dep. A 109:7-10.) Deegan observed Strei pacing in the house and saw him reach for something. (Deegan Dep. 49:6-

17.) Deegan shouted to Strei that he could see him, at which point Strei opened the door. (Deegan Dep. 50:23-51:9; Strei Dep. A 102:20-103:9; Vogel Aff., Ex. H at 22.)

Deegan informed Strei that he had received an email from Becker County indicating that Strei should not be at the Property, and that he needed to pack a bag and leave the Cabin. (Vogel Aff., Ex H at 22; Deegan Dep. 51:10-13; Strei Dep. A 262:15-23.) Strei claims that Deegan first said Deegan "didn't know why he was there" and then "said he got an e-mail and he didn't know why, but that I needed to just pack a bag and leave." (Strei Dep. A 103:10-17.) Deegan asked Strei to leave the Property at least six times. (Deegan Dep. 86:14-87:4; Strei Dep. A 109:20-110:18.) Strei testified that although Deegan continually asked him to leave the Property, Strei was not actually given "the opportunity to leave." (Strei Dep. A 110:3-5.)

Strei insisted that he had paperwork to show Deegan establishing his right to be at the Property. (Deegan Dep. 54:14-55:14.) Deegan told Strei that he could show him the paperwork, but Strei never produced any. (*Id.* 54:14-55:14, 112:18-24.) At some point, Deegan asked Strei if he would show Deegan his guns and Strei agreed. (*Id.* 55:15:56:9; Strei Dep. A 104:4-6.) Deegan found several loaded weapons and proceeded to unload them. (Deegan Dep. 56:15-57:19; Strei Dep. A 104:5-6.) Strei testified that during this time he was packing his belongings in an effort to leave. (Strei Dep. A 104:6-7.)

After unloading the guns, Deegan called McArthur to provide him with a synopsis of the situation and to confirm that arrest for trespass pursuant to the November 1 email was appropriate because Strei was refusing to leave the Property. (Deegan Dep. 58:4-59:4; McArthur Dep. 13:9-14:5.) McArthur in turn contacted Blaine. (McArthur Dep.

14:6-20.)  Blaine confirmed that the information in the email "still stands" and that if Strei was at the Property "he can be placed under arrest and taken into custody."  (*Id.* 14:13-25.)  McArthur called Deegan back and provided him with this information, and confirmed that if Strei refused to leave the Property Deegan should take him into custody. (*Id.* 15:3-18; Deegan Dep. 60:23-61:11.)

Deegan then placed Strei under arrest and handcuffed him.  (Deegan Dep. 63:13-18.)  Deegan testified that he told Strei he was under arrest for trespassing.  (*Id.* 64:6-15.) Strei testified that when he asked why he was being arrested Deegan did not know and said that it was not for trespassing.  (Strei Dep. A 104:13-17.)  Strei testified that Deegan "said it was some Minnesota Statute, he was mumbling about it being something about being inside a dwelling."  (*Id.* 104:13-21.)  Deegan then escorted Strei to the squad car. (Deegan Dep. 23-24; Strei Dep. A 104: 22-23.)  At Strei's request Deegan took Strei's duffle bag full of belongings.  (Deegan Dep. 64:2-5.)  Deegan also placed Strei's firearms in the trunk of the squad car.  (Vogel Aff., Ex. H at 22.)

Deegan transported Strei to the Becker County jail.  (Deegan Dep. 66:13-16; Strei Dep. A 106:1.)  During the drive, Strei testified that he repeatedly asked Deegan why Deegan would not let Strei contact an attorney and why Strei was under arrest, but received no answers.  (Strei Dep. A 106:2-10.)  Deegan testified that although misdemeanor offenses such as trespass are usually dealt with by a citation, he arrested Strei because he "would not leave the premises, so he was committing a trespassing offense in front of me.  He would not leave.  I asked him to leave several times." (Deegan Dep. 66:19-67:6.)  Deegan testified that because Strei would not leave the

Property a citation would have been ineffective, and he was also concerned about the presence of the guns and the close proximity of Hensen and Merz. (*Id.* 99:16-100:21.) Strei testified that he was never allowed to leave the Property before being placed under arrest because he "wasn't given enough time." (Strei Dep. A 113:3-20.)

### A.    Strei's Custody

Strei stayed in the jail overnight. (Strei Dep. A 107:1-3.) Strei testified that there was no charge against him, and therefore he was not allowed to post bail. (*Id.* 107:4-9.) The day after his arrest Strei spoke with Nguyen who told Strei "she was going to call somebody and find out why [Strei] didn't have a charge." (*Id.* 107:19-25.) Nguyen then allegedly told Strei "I don't understand, you were supposed to be cited for trespassing. Sorry about that. I don't know why you are here, but here is the citation for trespassing." (*Id.* 108:1-3.) At that point, a charge was made against him, and Strei was able to post bail. (*Id.* 108:4-7.)

### B.    Strei's Possessions

A week after Strei's arrest, Hensen moved his personal possessions from the Property to a storage unit. (Hensen Dep. A 78:1-2.) Hensen did not ask Strei's permission or consult law enforcement before moving his possessions. (*Id.* 78:3-18, 79:4-8, 148:8-18.) Hensen informed Strei that she had moved his possessions and mailed a key to the storage unit to Strei's mother on November 18, 2011. (Hensen Dep. B 82:2-16.) Hensen also testified that Strei's snowmobile, riding lawnmower, and fish house remained on the Property. (Hensen Dep. C 85:4-8.)

### C.   Criminal Charges

On November 14, 2011, over a week after Strei's arrest, Blaine signed a formal criminal complaint against Strei charging Strei with trespassing based on the fact that the landowner had reported his presence on a property posted with 'no trespassing' signs. (Vogel Aff., Ex. J at 4-5.)   Miller later determined that he had insufficient evidence to prove the charge beyond a reasonable doubt and therefore dismissed the trespass charge. (Miller Dep. A 62:23-63:8; Vogel Aff., Ex. K at 13.)   In particular, the financial documents and the possibility of some agreement between Strei and Hensen regarding ownership of the Property convinced Miller not to pursue the charge.   (Miller Dep. A 63:16-65:5.)   Miller communicated his decision to drop the charge by letter to Hensen. (Vogel Aff., Ex. K at 11.)   Miller stated that he had reviewed a letter from Aldrich to Strei indicating that he had "violated the terms" of his agreement with Hensen and Strei's response "questioning the violation of any agreement."   (*Id.*)   Miller stated "Since that issue would be one for discussion, there is no way I can overcome my burden to prove that he did not have a good faith belief that he had a claim of right to use the property." (*Id.*)

### VI.   QUIET TITLE ACTION

In February 2012 Hensen commenced a quiet title action in Becker County District Court.   (First Hensen Aff., Ex. A.)   On November 29, 2012, the court granted summary judgment in Hensen's favor.   (Second Hruby Aff., Ex. 3 at 5.)   The court found that any claims of conditions surrounding the conveyance of the Property to Hensen by

quitclaim deed were not evidenced in writing and therefore were unenforceable for failure to comply with the statute of frauds. (*Id.*, Ex. 3 at 2-5.) Accordingly, the Court concluded that Hensen was the sole owner of the Property. (*Id.*) Judgment was entered in Hensen's favor in December 2012 and stated that "Defendant's claims to the property and the validity, superiority and priority of such claims are NULL and VOID, and the Defendant has no estate or interest in, or lien or encumbrance upon, or any right to use or possess the property." (*Id.*, Ex. 3 at 6-7.)

## VII.   PROCEDURAL HISTORY

Strei filed the present lawsuit on May 3, 2012, naming Blaine, McArthur, Deegan, Hensen, Merz, and Becker County as Defendants. (*See* Compl., May 3, 2012, Docket No. 1.) Strei filed an amended complaint on January 12, 2013, adding Miller as a Defendant. (*See* Am. Compl., Jan. 12, 2013, Docket No. 38.) Strei's amended complaint brings claims against all Defendants under 42 U.S.C. § 1983 based on violations of the Fourth Amendment, denial of due process, malicious prosecution, and conspiracy. (*Id.* ¶¶ 27-29.) The amended complaint also brings state law claims for trespass to property, trespass to chattel, conversion, civil theft, malicious prosecution, abuse of process, civil conspiracy, and negligence against all Defendants. (*Id.* ¶¶ 31-36, 38-39.) Additionally, the amended complaint brings a claim for false imprisonment against Blaine, McArthur, and Deegan (*id.* ¶ 30) and a claim for defamation against Hensen (*id.* ¶ 37).

Hensen filed a counterclaim alleging generally that Strei "failed to undertake a reasonable inquiry to determine if he had a legally enforceable ownership interest in the lake property" and that:

> The plaintiff's insistence that he has a right to use the property . . . and his efforts to continuously trespass on Ms. Hensen's property after the two had broken up has prevented Ms. Hensen from using the property herself since June of 2011 since she has been afraid that the plaintiff would trespass on her property and break into the cottage if she was staying there by herself. She has also incurred significant mental distress, lost time at her business, and incurred significant attorney's fees in an effort to prevent Mr. Strei from continuing to claim and to act as though he owns the property belonging to Ms. Hensen.

(Joint Answer & Countercl. ¶¶ 42, 45, May 22, 2012, Docket No. 2.)

## ANALYSIS

## I.   MOTION TO DISMISS

Defendants McArthur and Deegan previously brought a motion to substitute the United States as defendant for the common law tort claims brought against them pursuant to the Federal Tort Claims Act ("FTCA").   (Mot. to Substitute, May 1, 2013, Docket No. 48.)   The Magistrate Judge granted that motion (Order, July 11, 2013, Docket No. 61) and the Court affirmed (Mem. Op. & Order, Dec. 3, 2013, Docket No. 112). Accordingly, the United States is the party defendant for the common law claims brought by Strei against McArthur and Deegan.   The United States now seeks dismissal of those claims on the basis that Strei has not exhausted the FTCA's administrative process.

The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  An administrative claim must be filed within two years after the claim accrues.  28 U.S.C. § 2401(b); *see also Motley v. United States*, 295 F.3d 820, 821 (8th Cir. 2002).  If the Court grants a motion for substitution and dismisses the action for failure to comply with § 2675(a), a plaintiff's claim will be deemed to be timely presented under § 2401(b) if "the claim would have been timely had it been filed on the date the underlying civil action was commenced" and "the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action."  28 U.S.C. § 2679(d)(5).

Strei has not filed an administrative claim, and therefore may not proceed with his common law tort actions against the United States.  (Decl. of Scott Sufficool ¶¶ 2-3, Aug. 1, 2013, Docket No. 83.)  Accordingly, the Court will grant the United States' motion to dismiss Strei's claims for false imprisonment, trespass to property, trespass to chattel, conversion, civil theft,[5] malicious prosecution, abuse of process, civil conspiracy, and negligence without prejudice.

---

[5] Although civil theft (Count 8) is a claim based upon violation of a Minnesota statute, rather than a common law tort, it falls within the purview of the substitution order because the FTCA provides that the United States is the exclusive defendant for claims of "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 29 U.S.C. § 2679(b)(1).  The only applicable exception is that an action may be maintained against an individual federal employee "for a violation of the Constitution of the

(Footnote continued on next page.)

## II.  DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT[6]

### A.  Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

––––––––––––––––––––––––––––––––––––––––

(Footnote continued.)

United States" or "for a violation of a statute of the United States under which such action against an individual is otherwise authorized."  28 U.S.C. § 2679(b)(2).  Accordingly, the Court's substitution order substituted the United States as defendant for the civil theft claim in addition to the torts alleged in Strei's complaint.

[6] The Court notes that Strei's allegations with respect to most of his claims treat the individual Defendants monolithically.  In other words, with the exception of defamation and false imprisonment, each of Strei's claims generally asserts that "Defendants" committed a particular wrong – such as trespass or conversion – despite the fact that each Defendant played a unique and distinct role in the circumstances giving rise to this litigation.  Liability for many of the Defendants with respect to a particular claim therefore depends on Strei's overarching claim of conspiracy.  Because the Court ultimately finds that each of Strei's claims fails on the merits, and none of the Defendants have liability, it does not parse the facts to determine which Defendants would be subject to liability if any claim were viable.

### B.   Section 1983 Claims

To maintain a Section 1983 claim, a plaintiff must show "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). "For there to be section 1983 liability, 'there must first be a violation of the plaintiff's constitutional rights.'" *Avalos v. City of Greenwood*, 382 F.3d 792, 802 (8th Cir. 2004) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). Therefore, the Court will begin by examining whether Strei's claims establish violation of any constitutional rights.[7]

### 1.   Fourth Amendment

The basis of Strei's Fourth Amendment claim is that Defendants violated his rights on November 5, 2011

---

[7] In support of their motions for summary judgment McArthur, Deegan, Blaine, Miller, and Becker County additionally argue that they are entitled to qualified immunity from Strei's § 1983 claims. Qualified immunity shields government officials from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considers two factors in determining whether qualified immunity is applicable: (1) whether the facts alleged show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The order in which these two factors are addressed is left to the discretion of the court. *Id.* at 236. Hensen and Merz, however, are not entitled to qualified immunity, and the Court therefore must analyze whether Strei's constitutional rights were violated in determining whether to grant Hensen and Merz's motion for summary judgment on the § 1983 claims, so it would not conserve judicial resources to first consider whether the relevant constitutional rights were clearly established at the time of the misconduct Strei alleges. Rather, the Court will consider, with regard to all Defendants, whether there are facts upon which a reasonable jury could conclude that there was any violation of a constitutional right.

> by entering and searching Plaintiff's house and his possessions without a
> warrant, consent or other legal justification, and by detaining, arresting and
> jailing Plaintiff without any probable cause to believe that he had
> committed any crime and based on a charge that they knew was false, and
> by removing Plaintiff and his possessions or allowing his possessions to be
> removed without judicial or other legal authorization.

(Am. Compl. ¶ 27; *see also* Mem. in Opp. to Mots. for Summ. J. at 29, Sept. 30, 2013,

Docket No. 103.)

The Fourth Amendment protects the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const., amend. IV.   A warrantless arrest is reasonable under the Fourth Amendment

"where there is probable cause to believe that someone has committed or is committing a

crime." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013); *see also*

*Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010).   "Probable cause to make a

warrantless arrest exists 'when the totality of the circumstances at the time of the arrest

are sufficient to lead a reasonable person to believe that the defendant has committed or

is committing an offense.'" *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)

(quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)).   "[P]robable cause

requires only a probability or substantial chance of criminal activity, rather than an actual

showing of criminal activity" therefore, "the police need not have amassed enough

evidence to justify a conviction prior to making a warrantless arrest." *United States v.*

*Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005).   In ascertaining whether probable cause

exists, "'[o]fficers are generally entitled to rely on the veracity of information supplied by

the victim of a crime'" and are given "substantial latitude in interpreting and drawing

inferences from factual circumstances." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816-17 (8th Cir. 2010) (quoting *Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995)).  Furthermore because "'probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest.'"  *Id.* at 816 (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)). Whether probable cause existed at the time of an arrest is a question of law to be decided by the Court.  *Joseph v. Allen*, 712 F.3d 1222, 1226-27 (8th Cir. 2013).[8]

---

[8] For this reason, the expert report submitted by Strei is of limited value to the Court's analysis.  Strei submitted an expert report from Mark D. Larsen, a former Assistant United States Attorney for the Central District of California and the District of Minnesota.  (Decl. of Mark Larsen at 2, Sept. 30, 2013, Docket No. 105.)  Larsen opines that based on the facts "Strei's constitutional right to be free from an unreasonable arrest not based upon probable cause was violated by state actors Merlin Deegan, Scot Blaine, John McArthur and Kevin Miller, and others working with them." (*Id.* at 8.)  In particular, Larsen contends that Miller's investigation and determination that probable cause existed was "not based upon a reasonable investigation." (*Id.*)  Larsen faults Miller for waiting to receive documents related to the Strei matter, rather than seeking them out on his own, explaining that

> [a]t the time of Strei's arrest, he held and had asserted a claim of right regarding possession of the Juggler Road Premises both in court and directly . . . to law enforcement personnel. . . . Whether or not correct, Strei's claim of right previously had been asserted before Judge Irvine in the very courthouse occupied by the Assistant Becker County Attorney.

(*Id.* at 9, 11-12.)  Under Eighth Circuit precedent, it is unlikely that these opinions about reasonableness under the Fourth Amendment would be admissible, as they are legal conclusions inappropriate for an expert to make.  *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (affirming exclusion of expert testimony where "Russo's expert opinions regarding the reasonableness of the evidence collection and strip search procedures were impermissible legal conclusions.  Russo's report consisted of his opinions regarding the overall reasonableness of the procedures used and, as such, were not fact-based opinions."); *Peterson*, 60 F.3d at 475 (explaining that expert testimony on reasonableness of police behavior in light of Fourth Amendment standards is a statement of legal conclusions and not admissible). Accordingly, the Court will make its own evaluation of reasonableness and probable cause in light of the record evidence without relying on Larsen's opinion.

The heart of Strei's Fourth Amendment claim is that probable cause did not exist for his arrest for misdemeanor trespassing in violation of Minn. Stat. § 609.605, subd. 1(b)(4).  The statute provides that "[a] person is guilty of a misdemeanor if the person intentionally . . . occupies or enters the dwelling or locked or posted building of another, without claim of right or consent of the owner or the consent of one who has the right to give consent."  *Id.*  A claim of right under the statute can be based on "a claim of title or ownership."  *State v. Hoyt*, 304 N.W.2d 884, 889 (Minn. 1981).[9]  "A bona fide belief, i.e., a good faith claim of right, negatives the criminal intent required by" the trespass statute.  *Id.* at 889-90 ("A claim of right . . . is a defense to a charge of criminal trespass.").  Strei argues that probable cause was lacking because he had a bona fide claim of right to the Property at the time of his arrest due to the fact that (a) Hensen had agreed that his name would be put back on the title after the financial difficulties associated with the sale of his other property had been resolved and he resumed contributing half of the payments toward the Property; and (b) he had placed money in a savings account and earmarked it as his share of payments toward costs of owning the Property.  Furthermore, Strei contends that because a state court judge had determined he

---

[9] In *Hoyt*, the Minnesota Supreme Court analyzed a different provision of a previous trespass statute which made it a misdemeanor to intentionally "'[t]respass[] upon the premises of another and, without claim of right, refuse[] to depart therefrom on demand of the lawful possessor thereof.'"  304 N.W.2d at 887 (quoting Minn. Stat. § 609.605(5) (1980)).  The court indicated that in addition to "a claim of title or ownership" a claim of right could also be based upon "[e]xpress or implied consent [of] a license . . . from one who has the authority to give such consent."  *Id.* at 889.  Because Strei does not claim that he had consent to be on the Property, the Court focuses its discussion on the "claim of title or ownership" definition of claim of right used by the Minnesota Supreme Court.

could not be evicted from the Property pursuant to landlord-tenant law, the judge impliedly determined that Strei's claim of right to the Property was worthy of some credence and that Strei was entitled to stay on the Property until a quiet title action determined that such a right was invalid.

The Court concludes that, notwithstanding Strei's contention that he had a claim of right to the Property, the arrest of Strei for misdemeanor trespass was supported by probable cause. At the time of Strei's arrest Miller and Blaine[10] had seen a quitclaim deed reflecting that Hensen was the sole owner of the Property and mortgage documents reflecting that Hensen was the sole borrower. Miller was also aware that Hensen had previously filed an unsuccessful eviction action. Hensen had communicated to Miller, Blaine, and Deegan that she was the sole owner of the Property and that Strei did not have her permission to be on the Property. Miller and Blaine had seen that 'no trespassing' signs had been posted on the Property, and Deegan observed these postings when he responded to the Property on November 5, 2011. When he responded to the Property on November 5, it is undisputed that Deegan told Strei he could not be at the Property and he should pack a bag and leave. It is also undisputed that Strei did not leave

---

[10] In determining what information supported Deegan's probable cause determination at the time of Strei's arrest, the Court considers the collective knowledge of Deegan, Miller, Blaine, and McArthur. *See United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) ("When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication."); *see also United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000). It is undisputed that Miller shared his findings regarding the documents with Blaine and McArthur, who in turn communicated the information regarding trespass to Deegan.

the Property. Nor did Strei show Deegan the paperwork that he claimed to have establishing his right to be at the Property. Considering the totality of the circumstances, the Court finds that the information known to Deegan and his co-investigators at the time of Strei's arrest was sufficient to lead a reasonable person to believe that Strei was committing misdemeanor trespass. The information upon which Deegan and his co-investigators were entitled to rely indicated that Strei did not have an ownership interest in the Property, the owner of the Property had not given him consent to be on the Property, and the Property was properly posted with no trespassing signs. *See Galarnyk v. Fraser*, 687 F.3d 1070, 1075 (8th Cir. 2012) (finding that in making an arrest for misdemeanor trespassing the officer was "entitled to rely on [the victim]'s credible report that Galarnyk was not supposed to be in a restricted area and refused to leave").

Strei argues that the facts known to Deegan and his co-investigators were insufficient to support a finding of probable cause because they failed to thoroughly investigate his claim of right to the Property. In particular, Strei claims that Miller and/or the officers should have reviewed the transcript of the eviction proceeding to determine that he had a claim of right to be on the Property and therefore could not be liable for criminal trespass.

Strei's argument misapprehends the nature of an officer's obligation in assessing probable cause. It is true that "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Although "probable cause does not exist when a minimal further investigation would have exonerated the suspect," officers "need not conduct a

mini-trial before making an arrest." *Id.* (internal quotation marks omitted); *see also*

*Joseph*, 712 F.3d at 1228 ("The law does not require law enforcement officers to conduct

a perfect investigation to avoid suit for false arrest.").  In particular, officers are not

required to conduct in-depth investigations regarding a suspect's state of mind where the

facts supplied by the victim suggest that a crime is being committed.  *See Borgman*, 646

F.3d at 523-24 (finding that although the suspect "emphatically denied knowing that she

was trespassing" a reasonable officer was not required to rely upon that explanation

where the officer had been told by casino personnel that the suspect had voluntarily

signed exclusion forms that barred her from the premises).  For example, in *Fisher* the

court found that probable cause existed to arrest Fisher when a Walmart employee

contacted police and told them that Fisher, a Walmart customer, was attempting to cash

fake money orders.  619 F.3d at 817.  The undisputed facts indicated that when the

officer arrived, the employee "confidently identified Fisher to [the officer] as the person

at the front desk who had brought the fake money orders" and the officer "verified that

the money orders were counterfeit." *Id.*  Fisher contended that if the officers had

"investigated upon arrival whether Fisher attempted to cash the fake money orders" they

would have learned that she brought the money orders to Walmart for the sole purpose of

determining whether they were genuine, and had not attempted to cash the money orders.

*Id.* at 814, 817.  The Eighth Circuit held that such inquiry was not required in order to

satisfy the officer's obligation to establish probable cause.  *Id.* at 817.

Here, neither Miller nor the officers were required to interview Strei or thoroughly

investigate the veracity of his possible claim of right to the Property before making a

determination of probable cause. *See Clayborn v. Struebing*, 734 F.3d 807, 809 (8th Cir. 2013) ("Clayborn suggests a number of ways the officers may have investigated further, such as viewing video surveillance footage, making a timeline of her activities at the mall, further discussion with mall security, or a search of her wallet. The officers had no duty to conduct further investigation once they had (arguable) probable cause to arrest."). At the time of the arrest Strei communicated to Deegan that he had paperwork establishing his right to be on the Property, but never produced any paperwork. Deegan was not required to further investigate this claim because "it would have taken more than 'minimal further investigation' to sort out any inconsistencies between the statements by" Hensen and Strei. *See Borgman*, 646 F.3d at 523; *see also Clayborn*, 734 F.3d at 810 (finding that further investigation was not required because "[t]he officers' suspicion also would not have been dispelled by briefly questioning anyone at the scene"). Additionally, Deegan was not required to "rely on [the] explanation given by [Strei]" regarding his state of mind about his right to be on the Property, and was instead entitled to "rely on the implications of the information known to him" such as the quitclaim deed and the mortgage documents reflecting that Hensen was the sole borrower "when assessing whether a suspect possessed the state of mind required for the crime." *Borgman*, 646 F.3d at 524 (internal quotation marks omitted).

Furthermore, Miller and the officers were not required to review the transcript, because nothing in the transcript plainly undermined the reasonable conclusion that Strei was trespassing. *See Clayborn*, 734 F.3d at 810 (finding further police investigation prior to arrest unnecessary because the officers "did not disregard 'plainly exculpatory'

evidence" (quoting *Kuehl*, 173 F.3d at 650)).   Strei's argument that the transcript established his claim of right to the Property misconstrues the import of the Becker County Court's dismissal of Hensen's eviction action.   Strei essentially contends that because Hensen was unable to remove him from the Property through an eviction proceeding the judge necessarily determined that he had a right to be on the Property and could not be the subject of an arrest for criminal trespass.   Strei testified: "Because it is a dismissal of an eviction action, which would mean that I can't be removed from the property, so that [] mean[s] I can be on the property."   (Strei Dep. A 89:7-9.)   But the Becker County Court concluded with respect to the eviction action **only** that Hensen had failed to prove the allegations in her complaint – namely that she had leased or rented the Property to Strei and he had failed to make rent payments.   The judge stated on the record that the issue presented by the parties was one of ownership and not "who is in a position to evict a tenant in a landlord/tenant situation."   (Vogel Aff., Ex. H at 12.)   Neither the order dismissing the eviction complaint nor the transcript makes any determinations about Strei's or Hensen's legal rights of ownership to the Property.   In fact, although the judge noted that the documents might at least raise a question as to whether or not Strei had an ownership interest in the Property, the judge expressly declined to consider such a question.   Therefore the transcript does not, as Strei contends, establish conclusively that he had a claim of right to the Property such that he could not be arrested for trespassing. Therefore, even if Miller and the officers had examined the transcript, it would not have revealed exculpatory information that would have negated a finding of probable cause.

The facts of this case are analogous to the facts in *Perkins v. Saint Louis County*, 397 N.W.2d 405 (Minn. Ct. App. 1986), a false arrest case.   In *Perkins*, the court explained that even a police officer's knowledge of an arrestee's potential claim of right to property is insufficient to negate probable cause.   *Id.* at 407.   There, the arrested parties stated they had a claim to the property, and the officer, Lundgren, "did not deny that appellants had asserted they owned the land" at the time of arrest and "admitted he knew they had at one time lived there."   *Id.*   However, the court held the arrest was still supported by probable cause, explaining:

> Lundgren acted in response to Perkins' complaint that appellants kicked him out of his leased cabin.  Perkins provided a lease running in his favor, a survey and a deed to Pence, the lessor, and Pence's on-the-spot statement that he was the owner of the cabin in question and had leased it to Perkins. Appellants did not document their claim of ownership.  Lundgren received three complaints from Perkins.  He did not at first arrest appellants, but gave the parties an opportunity to informally solve the problem between themselves.  When this did not work out, Lundgren was called again by Perkins and, as a peace officer, had to make an on-the-spot decision whether to arrest appellants.   We hold that under the circumstances, Lundgren could reasonably have believed appellants were trespassing, and the arrest and subsequent imprisonment were based on probable cause.

*Id.* at 409.[11]   At most, the transcript of the eviction proceedings would have alerted Miller and the officers to Strei's belief that he had an ownership interest in the Property – a

---

[11] Strei argues that *Perkins* is distinguishable because the arrestees in *Perkins* did not have documentation to support their claim of ownership, whereas "Strei had an order from a judge indicating that Hensen did not have legal grounds to remove him from the property." (Pl.'s Mem. in Opp. to Defs.' Mots. for Summ. J. & Dismissal at 31, Sept. 30, 2013, Docket No. 103.)   As explained above, however, the order dismissing Hensen's eviction action concluded only that Hensen had failed to establish the existence of a landlord-tenant relationship, not that she had no legal grounds to seek to remove Strei from the Property.  Therefore the facts of *Perkins* are analogous to the circumstances surrounding Strei's arrest.

contention that Deegan was already aware of at the time of the arrest because Strei

communicated it to him.  As in *Perkins*, in light of the totality of the circumstances, this

information would not have negated probable cause.[12]  Therefore, the Court concludes

_____

[12] Strei also makes a variety of other arguments, none of which the Court finds supports his contention that probable cause was lacking.  First, Strei contends that probable cause did not exist because a dispute over property ownership is a civil action, and probable cause can only exist in relation to criminal conduct.  As support, Strei points to the Becker County Judge's recommendation that the parties resolve their property dispute in a civil forum, Deegan's conclusion following the October 21 dispatch call that the dispute between Hensen and Strei was a civil matter for the courts, and Deputy Sweere's comment to Merz that "until they get everything settled through the courts [Strei and Hensen] both have rights to the property." (Vogel Aff., Ex. I at 2.)  But the existence of a possible civil dispute does not automatically negate the necessary finding of probable cause with regard to criminal intent.  *See Royster v. Nichols*, 698 F.3d 681, 690 n.11 (8th Cir. 2012).  Here, a Minnesota statute indicated that Strei's conduct in staying at the Cabin was potentially criminal.  Additionally, Deegan and his co-investigators did not have knowledge of Strei's **actual and reasonable belief** that he was entitled to possession of the Property at the time of his arrest.  *See Peterson*, 60 F.3d at 476-77 (finding that probable cause for theft did not exist where "[i]t was clear from the information known to Officer Ridgley that Peterson took the snowblower under the actual and reasonable belief that it had been abandoned" and this knowledge "put Officer Ridgley on notice that the dispute was a civil matter not involving criminal intent").  Furthermore the statements of Deegan and Sweere were made without knowledge of the quitclaim deed and mortgage documents establishing that Hensen was the sole borrower and prior to the Property being posted with no trespassing signs.  Therefore, these statements are not relevant to whether the matter was solely a civil dispute at the time of Strei's arrest.  Second, Strei makes much of the fact that Deegan allegedly could not articulate why he was arresting Strei and that there was confusion about why he had been arrested rather than cited when he arrived at the jail.  Whether Deegan articulated that misdemeanor trespass was the basis for detaining Strei is irrelevant to the existence of probable cause.  *See Galarnyk*, 687 F.3d at 1075-76 (explaining that an officer's "'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause'" (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004))).  Similarly, Strei has identified no legal authority indicating that a Fourth Amendment violation could arise out of Nguyen's comment that she was under the impression Strei was going to be cited for trespassing rather than arrested.  Finally, Strei argues that there was no probable cause because he was not given a real opportunity to leave the Property after Deegan arrived at the Cabin on November 5.  As explained above, however, as soon as Deegan arrived at the Cabin he had probable cause to believe that Strei had committed, and was continuing to commit the crime of misdemeanor trespass.  Probable cause empowers an officer to effect a warrantless arrest when the "facts and circumstances are sufficient to lead a reasonable person to believe that the defendant **has committed** or is committing an offense."  *Fisher*, 619 F.3d at 816 (internal

(Footnote continued on next page.)

that no genuine issue of material fact remains regarding Strei's § 1983 claim arising out of the Fourth Amendment because his arrest was supported by probable cause and therefore did not violate the Fourth Amendment.   Accordingly, the Court will grant Defendants' motions for summary judgment with respect to this claim.[13]

### 2.   Due Process

In his amended complaint Strei alleges that Defendants violated his due process rights and maliciously prosecuted him "by arbitrarily and improperly removing him from his property . . . without proper legal process, and by arranging for and pursuing his prosecution based on deliberately false allegations."   (Am. Compl. ¶ 28.)   In his memorandum in opposition to the Defendants' motions for summary judgment, Strei

_____

(Footnote continued.)

quotation marks omitted).   Therefore, even if Strei had stopped committing the offense of trespassing by leaving the Property, Deegan could still have arrested him, as he had probable cause to believe that Strei had committed a crime by being on the Property.

[13] Because Strei's arrest was lawful, so too was the seizure of his guns, as the guns were seized incident to that arrest in an effort to ensure officer safety.   *See Dupree v. United States*, 380 F.2d 233, 234-35 (8th Cir. 1967); *cf. Walters v. Wolf*, 660 F.3d 307, 314 (8th Cir. 2011) ("The initial deprivation – the seizure of Walter's handgun and ammunition incident to arrest – was a valid deprivation.").   Additionally, Strei contends in his memorandum in opposition to the Defendants' motions for summary judgment that he has a Fourth Amendment claim "for malicious prosecution arising out of the false trespass charge."   (Pl.'s Mem. in Opp. to Defs.' Mots. for Summ. J. & Dismissal at 29 n.4, Sept. 30, 2013, Docket No. 103.)   The Eighth Circuit has held that "an allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983," *Joseph*, 712 F.3d at 1228 (citing *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001)), and here Strei has provided nothing beyond this allegation to support this claim.   Furthermore, even if such a claim was otherwise viable, it could not be maintained where the record shows that officers had probable cause to arrest and initiate criminal proceedings.   *Id.* Therefore, the Court finds that Defendants are entitled to summary judgment on any of Strei's claim for malicious prosecution under the Fourth Amendment.

argues that his due process claim arises out of the order denying Hensen's eviction proceeding, which he claims "gave rise to a liberty and property interest" leading to a "constitutional expectation" that Defendants "would not remove him from the property, much less arrest him and charge him with a crime for being present on the property without further judicial process to determine the parties' respective rights to the property." (Pl.'s Mem. in Opp. to Defs.' Mots. for Summ. J. & Dismissal at 34, Sept. 30, 2013, Docket No. 103.)[14]

"A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Johnson v. City of Minneapolis*, 152 F.3d 859, 861 (8th Cir. 1998). "To have a constitutionally cognizable property interest in a right or a benefit, a person must have 'a legitimate claim of entitlement to it.'" *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Here, Strei has identified no liberty or property interest created by the order denying Hensen's eviction action. As explained above, the order found merely that Hensen had not established the allegations in her complaint – that she had leased the

---

[14] The portion of Strei's claim that he was "arbitrarily and improperly" removed from his home without legal process is subject to the Fourth Amendment analysis above. Essentially, this claim reiterates Strei's claim that his arrest was constitutionally deficient. Where one constitutional provision "provides an explicit textual source of constitutional protection" against certain conduct, the Court is required to analyze the claim under that provision rather than "the more generalized notion of 'substantive due process.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment provides the appropriate standards for determining when one has been improperly removed via an arrest, therefore the Court will grant Defendants' motions for summary judgment on Strei's § 1983 claim based on due process to the extent it reiterates his Fourth Amendment claim.

Property to Strei and that he had failed to pay rent.  The order did not establish that Strei had any ownership or other interest in the Property.  Additionally, the judge's comment in the transcript that the ownership interests of Hensen and Strei should be settled in a more appropriate forum did not create a liberty or property interest in a particular kind of proceeding to determine ultimate ownership of the Property.  A "constitutional right to judicial process is violated when the state 'destroy[s] a property interest without first giving the putative owner an opportunity to present his claim of entitlement.'"  *Austell*, 690 F.3d at 938 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)).  But Strei's arrest did not destroy any property interest.  Even if Strei had an ownership interest in the Property (which the eviction proceeding clearly did not address) he had a full and fair opportunity to litigate that interest in the quiet title proceeding, indicating that his arrest did not deprive him of a judicial process to litigate his claim of entitlement.  Because Strei has not presented evidence demonstrating that his right to due process was violated, the Court will grant Defendants' motions for summary judgment on this claim.

### 3.     Conspiracy

Strei's final § 1983 claim is based upon his contention that Defendants "conspir[ed] among themselves and with others to violate Plaintiff's rights under the Fourth and Fourteenth Amendments, in connection with the unlawful detentions and the accompanying violations."  (Am. Compl. ¶ 29.)  Because this claim hinges on the viability of the underlying constitutional violations discussed above, the Court will grant summary judgment in favor of all Defendants with respect to this claim.  *See White v.*

*McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) ("The plaintiff is . . . required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.").

## C.     False Imprisonment[15]

The tort of false imprisonment or false arrest "protects the personal interest in freedom from restraint of movement." *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974). "An arrest made without proper legal authority is a false arrest, and any subsequent restraint is false imprisonment." *Binion v. City of St. Paul*, 788 F. Supp. 2d 935, 949 (D. Minn. 2011) (internal quotation marks omitted). Therefore, to prevail on a claim for false imprisonment or arrest a plaintiff must prove that an arrest was performed by the defendant and that the arrest was unlawful or without legal justification. *Id.*

---

[15] Miller, Blaine, and Becker County (collectively, "the County Defendants") argue in support of their motion for summary judgment that they are entitled to official immunity with regard to Strei's common law claims. "In Minnesota, a police officer is entitled to official immunity from state law claims when such police officer is charged by law with duties that require the exercise of judgment or discretion." *Teichberg v. Smith*, 734 F. Supp. 2d 744, 752 (D. Minn. 2010) (citing *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990)). "The doctrine of official immunity protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a wilful or malicious wrong." *Rico v. State*, 472 N.W.2d 100, 106-07 (Minn. 1991). In this context, malice means "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Id.* at 107. If a court determines that individual officers are entitled to official immunity, their employer "is entitled to vicarious official immunity as to Plaintiff's respondeat superior claims." *Teichberg*, 734 F. Supp. 2d at 753 (citing *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998)). Although official immunity for the County Defendants is likely appropriate here, the Court resolves the tort claims on the merits as a matter of efficiency. Because each of the tort claims is also asserted against Hensen and Merz in addition to the County Defendants, an analysis on the merits of each claim is required to resolve the present motions. Therefore, the Court need not resolve the parties' disputes regarding the applicability of official immunity, but will grant summary judgment in the County Defendants' favor on the merits.

Because the Court has already determined that Strei's arrest was supported by probable cause, he cannot maintain an action for false imprisonment, and the Court will grant Defendants' motions for summary judgment with respect to that claim. *See Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008) (rejecting a claim for false imprisonment because the defendant "had legal justification to detain" the plaintiff); *Johnson v. Morris*, 453 N.W.2d 31, 40 (Minn. 1990) ("Because we held as a matter of law Van Hal had probable cause to arrest Johnson, it is unnecessary to address his false arrest and false imprisonment claims, and we hold that summary judgment dismissing those state tort claims was appropriate.").

### D.      Trespass to Property

Strei contends that Defendants committed trespass when they entered the Property and the Cabin "without claim of right or consent." (Am. Compl. ¶ 31.) "In Minnesota, a trespass is committed where a plaintiff has the 'right of possession' to the land at issue and there is a 'wrongful and unlawful entry upon such possession by defendant." *Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693, 701 (Minn. 2012) (quoting *All Am. Foods, Inc. v. Cnty. of Aitkin*, 266 N.W.2d 704, 705 (Minn. 1978) (per curiam)). The tort of trespass is concerned with disturbances to "the landowner's right to exclusively possess her land." *Id.* at 702. Although a claim for trespass does not require ownership of the property in question, a plaintiff must at least have the right to possess the property in order to bring a claim. *See Special Force Ministries v. WCCO Television*, 584 N.W.2d 789, 792 (Minn. Ct. App. 1998). Such possession by the plaintiff

must be "rightful." *Id.*; *see also Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 967 (8th Cir. 2010).

Strei does not dispute that the determination of the Becker County Court in the quiet title proceeding is binding on this Court and conclusive of the ownership interest in the Property.[16]  The court in the quiet title proceeding found that Hensen was the sole owner of the Property and that "Defendant's claims to the property and the validity, superiority and priority of such claims are NULL and VOID, and the Defendant has no estate or interest in, or lien or encumbrance upon, or any right to use or possess the property."  (Second Hruby Aff., Ex. 3 at 6-7.)  Strei does not argue that his alleged ownership or possessory interest in the Property changed between the fall of 2011 and December 2012 when the quiet title action was resolved in Hensen's favor.  Accordingly, Strei has failed to present any evidence that at the time he contends Defendants unlawfully entered the Property he had an ownership or possessory interest in the Property.  Therefore, the Court concludes that Strei cannot maintain a claim for trespass, and will grant Defendants' motions for summary judgment with respect to the trespass claim.

---

[16] The judgment rendered in the quiet title action is binding on the Court because federal courts must give full faith and credit to state court judgments. *See* 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Furthermore, a federal court lacks subject matter jurisdiction to exercise appellate review of a state court decision. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

### E.    Conversion

The basis of Strei's conversion claim is that Deegan "took his guns, and arranged so that he could not freely obtain the rest of his property," Hensen "took Strei's personal property without his permission by placing it in storage," and that all the other Defendants are liable because they "conspired with each other and Deegan to commit these actions." (Mem. in Opp. at 39.)[17]

> Conversion is
>
> an act of willful interference with [the personal property of another], done, without lawful justification, by which any person entitled thereto is deprived of use and possession, and the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods.

*Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003) (internal quotation marks omitted).  To prevail on a claim for conversion, a plaintiff must prove "(1) the plaintiff has a property interest and (2) the defendant deprive[d] the plaintiff of that interest." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 986 (8th Cir. 2008). Where a defendant initially gains control of personal property with lawful justification, "[w]rongfully refusing to deliver property upon demand by the owner constitutes conversion." *McKinley v. Flaherty*, 390 N.W.2d 30, 32 (Minn. Ct. App. 1986) (citing *Hindahl v. Am. Loan Soc'y*, 231 N.W. 408, 409 (Minn. 1930)).

---

[17]    In his amended complaint, Strei also alleges that his conversion action is based upon "the removal of Strei from his home" which deprived him "of said real . . . property." (Am. Comp. ¶ 33.)  Generally, a cause of action for conversion is appropriate only with respect to personal property. *See Hays v. CitiMortgage, Inc.*, Civ. No. 11-2477, 2012 WL 1319413, at *4 n.3 (D. Minn. Mar. 29, 2012).  Accordingly, to the extent Strei's claim is based upon conversion of the Property, the Court will grant Defendants' motions for summary judgment.

With respect to Strei's claims arising out of the seizure of his guns, the Court finds that Defendants cannot be liable for conversion because the dispossession was accomplished with lawful justification.  As explained above, because Strei's arrest was supported by probable cause, Deegan was also authorized, in the interest of his own safety, to search for and seize weapons incident to that arrest.  *See Dupree*, 380 F.2d at 234-35.  This dispossession was therefore lawful.  *See Rachuy v. Pauly*, Nos. A13-0393, A13-0394, 2014 WL 103388, at *3 (Minn. Ct. App. Jan. 13, 2014) (finding that a conversion claim did not lie for items seized by a police department where plaintiff had presented no information to support his claim that the officer acted without lawful justification); *Hassan v. City of Minneapolis*, No. C8-00-154, 2000 WL 1051910, at *4 (Minn. Ct. App. Aug. 1, 2000) (finding lawful justification for seizure of property where police executed a search warrant and seized allegedly stolen cigarettes and infant formula which it later destroyed when the items became contaminated with roaches).

Similarly, Strei has failed to present any evidence that Hensen's actions in moving Strei's personal possessions from her Property to a storage unit were done without lawful justification.  Hensen's initial possession of Strei's personal property was lawful because he was keeping it without her permission on Property of which she was the sole owner.  *Cf. Sloan v. Gillingham*, No. 37300, 2011 WL 11037658, at *2, *6 (Idaho Ct. App. July 7, 2011) (finding that defendant "lawfully came into possession of Sloan's personal property [located both in the home and on the grounds of the property] upon purchasing the real property").  Hensen then took the reasonable action of removing Strei's personal property from the Cabin, moving it to a storage facility, and promptly providing Strei's

mother with a key to the storage unit upon request.  Strei has not argued or presented any

evidence that Hensen destroyed or damaged any of Strei's possessions.  Nor has Strei

presented any evidence that Hensen refused to provide Strei access to his personal

property upon demand.   Accordingly, the Court finds that summary judgment in

Defendants' favor on Strei's conversion claim is appropriate.

### F.      Trespass to Chattel

"Trespass to chattel differs from conversion 'only in degree'" and "typically

involves less than a complete divestment of the plaintiff's possessory rights in his

property."  *Buzzell v. Citizens Auto. Fin., Inc.*, 802 F. Supp. 2d 1014, 1024 (D. Minn.

2011) (quoting *Wilkinson v. United States*, 564 F.3d 927, 932 (8th Cir. 2009)).   "A

trespass to chattel may be committed by intentionally (a) dispossessing another of the

chattel, or (b) using or intermeddling with a chattel in the possession of another."

Restatement (Second) of Torts § 217 (1965).  Under the Restatement:

> Dispossessing includes taking the chattel from the person in possession
> without his consent, obtaining possession of the chattel by fraud or duress,
> "barring the possessor's access to the chattel," or destroying the chattel
> while it is in another's possession.   "Intermeddling" means intentionally
> coming into physical contact with the chattel.   Liability arises if the
> defendant dispossesses the possessor of the chattel, impairs its condition,
> quality, or value, or deprives the possessor of the chattel's use for a
> substantial period of time.

*Olson v. Labrie*, No. A12-1388, 2013 WL 1788531, at *3 (Minn. Ct. App. Apr. 29, 2013)

(internal citations omitted) (quoting Restatement (Second) of Torts §§ 217, 218, 221-22).

Because trespass to chattel differs from conversion only in degree, Strei's trespass

to chattel claim fails for the same reason as does his conversion claim.   Strei has

presented no evidence that any of the control over his personal property exercised by Defendants was wrongful or without lawful justification.  *See Nieporte v. Citimor[t]gage, Inc.*, Civ. No. 11-10940, 2011 WL 3032331, at *3 (E.D. Mich. July 25, 2011) (explaining that trespass to chattel requires "a wrongful exercise of dominion or control over the plaintiff's personal property").  Therefore, the Court will grant Defendants' motions for summary judgment with respect to Strei's trespass to chattel claim.

### G.    Civil Theft

Strei also alleges that Defendants stole his property in violation of Minn. Stat. § 604.14, which provides, in relevant part:

> **Liability for theft of property.**  A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.

Minn. Stat. § 604.14, subd. 1.  Although there is limited authority examining Minnesota's civil theft statute, courts have relied on the criminal theft statute to determine whether a defendant's conduct amounted to theft.  *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1076 (D. Minn. 2013) (citing *Popp Telcom, Inc. v. Am. Sharecom, Inc.*, Civ. No. 96-1177, 2003 WL 1610789, at *9 (D. Minn. Mar. 20, 2003), *aff'd*, 361 F.3d 482 (8th Cir. 2004)).  The criminal theft statute defines theft to include a wide range of conduct, such as "intentionally and without claim of right" taking, using, transferring, concealing or retaining possession "of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property."  Minn. Stat. § 609.52, subd. 2(1).

To state a claim for civil theft based on the facts of the instant case, Strei must therefore be able to demonstrate that his property was taken without claim of right.  The Court finds this standard to be analogous to the "without legal justification" standard for conversion and trespass to chattel.  As explained above, Deegan's removal of Strei's guns from the Property cannot be construed as "stealing" under the civil theft statute because it was a lawful seizure performed in connection with a lawful arrest.  Similarly, Hensen's action in moving Strei's personal property to a storage unit cannot be construed as "stealing" because she had a right to remove his possessions from her Property, and did not cause any damage, destruction, or long term deprivation in so moving the items. Therefore, the Court will grant Defendants' motions for summary judgment with respect to the civil theft claim.

## H.    Malicious Prosecution

Strei claims that Defendants maliciously prosecuted him by "arranging for or instigating false criminal charges against Plaintiff that were not supported by probable cause." (Am. Compl. ¶ 35.)  To prevail on a claim for malicious prosecution a plaintiff must show that (1) the underlying lawsuit was brought without probable cause; (2) the action was instituted with malicious intent; and (3) the action was terminated in the defendant's favor.  *See Stead-Bowers v. Langley*, 636 N.W.2d 334, 338 (Minn. Ct. App. 2001); *see also Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1172 (D. Minn. 2013).

The Court has already determined that Strei's arrest was supported by probable cause. The evidence supporting the criminal complaint signed by Blaine was the same as the evidence supporting Strei's arrest, and therefore the initiation of criminal proceedings against Strei was also supported by probable cause. *See Nicholson v. Stanek*, Civ. No. 4-89-529, 1990 WL 134423, at *11 (D. Minn. Sept. 13, 1990) ("The Court has previously concluded probable cause existed to issue a search warrant and arrest plaintiff. The evidence supporting those determinations similarly supports the issuance of the complaint."). Although Miller later concluded that he did not believe sufficient evidence existed to prove the trespassing charge beyond a reasonable doubt, that does not, as Strei contends, indicate that probable cause to initiate the trespassing proceeding was lacking, because probable cause is a less onerous standard than beyond a reasonable doubt. Because the criminal proceedings were initiated with probable cause, the Court finds that summary judgment in Defendants' favor on the malicious prosecution claim is appropriate. *See id.*

## I.      Abuse of Process

In support of his claim for abuse of process, Strei alleges that Defendants "engaged in abuse of the legal process against Plaintiff by using criminal proceedings for the improper ulterior purposes of removing Plaintiff from his property without appropriate civil proceedings and retaliating against Plaintiff for exercising his right to possession of his property." (Am. Compl. ¶ 36.)

"The essential elements of a cause of action for abuse of process are 'the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not.'" *Leiendecker v. Asian Women United of Minn.*, 834 N.W.2d 741, 752 (Minn. Ct. App. 2013) (quoting *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997)). The distinction between malicious prosecution and abuse of process "'is that a malicious prosecution consists in maliciously causing process to be issued, whereas an abuse of process is the employment of legal process for some purpose other than that which it was intended by the law to effect – the improper use of a regularly issued process.'" *Dunham v. Roer*, 708 N.W.2d 552, 571 n.5 (Minn. Ct. App. 2006) (quoting *Black's Law Dictionary* 977-78 (8th ed. 2004)); *see also Young v. Klass*, 776 F. Supp. 2d 916, 924 (D. Minn. 2011).

The evidence presented by Strei suggests that the only motive of any Defendant in bringing criminal trespass charges was to remove him from the Property. Removal of an individual from a property is the very purpose for which a trespass proceeding is intended, and therefore cannot form the basis of an abuse of process claim. *See Dunham*, 708 N.W.2d at 571-72 ("Appellant argues that respondent's applications to the courts and police for establishment and enforcement of the restraining orders were purely retaliatory. But . . . [n]othing in the record suggests that respondent used the harassment process to accomplish any result other than limiting appellant's unwanted contacts and harassment described in the petition."). Strei has presented no evidence, for example, that Defendants used the criminal trespass proceeding improperly to coerce him to give up an

ownership interest in the Property.  Instead, the facts establish that the criminal trespass proceeding was instigated and used solely to remove Strei from the Property – a proper purpose.  Therefore, the Court will grant Defendants' motion for summary judgment with respect to Strei's abuse of process claim.

### J.    Defamation

The basis of Strei's defamation claim is that Hensen "defamed Plaintiff by false[ly] stating to law enforcement officers that he was trespassing on their joint property, and that he was armed and dangerous."  (Am. Comp. ¶ 37.)  Hensen moved for summary judgment on this claim, and Strei did not respond.  The lack of response, however does not automatically compel resolution in favor of the moving party, and the Court must still determine whether entry of summary judgment is appropriate based on the evidence presented.  *Mack v. Dillon*, 594 F.3d 620, 622 (8th Cir. 2010) (citing *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Mo.*, 27 F.3d 327, 329 n.1 (8th Cir. 1994)).

For a statement to be considered defamatory, "it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community."  *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980).  Additionally, a defendant is entitled to qualified privilege, and thus cannot be liable, if a statement is made "upon a proper occasion, from a proper motive, and based upon reasonable or probable cause."  *Hunt v. Univ. of Minn.*, 465 N.W.2d 88, 92 (Minn. Ct. App. 1991); *see also Bol v. Cole*, 561

N.W.2d 143, 149 (Minn. 1997).  A qualified privilege exists "when an individual makes a good faith report of suspected criminal activity to law enforcement officials.  Such a privilege applies, however, when communication is made with probable cause and for a proper purpose and occasion."  *Smits v. Wal-Mart Stores, Inc.*, 525 N.W.2d 554, 557 (Minn. Ct. App. 1994).

Here, all of the potentially defamatory statements identified by Strei are either true or entitled to qualified privilege.  The undisputed evidence shows that Strei had several loaded firearms in the Cabin.  Therefore Hensen's statement to police that he was armed was true, and cannot form the basis of a defamation claim.  Hensen's statement to police that Strei was on her Property without her permission and was therefore trespassing was also likely true in light of the outcome of the quiet title proceeding.  Even if that statement was false, however, Hensen would be entitled to qualified privilege.  At the time of her police reports Hensen had a good faith belief that Strei was committing criminal trespass by remaining on the Property, of which she believed herself to be the sole owner.  This statement was made for the proper purpose of having Strei removed from her Property.  Furthermore, given the presence of firearms Hensen had a proper purpose in warning the police that Strei was potentially dangerous.  Because the statements identified by Strei do not support a claim for defamation as a matter of law, the Court will grant Hensen's motion for summary judgment with respect to the defamation claim.

### K.    Negligence

To succeed on a claim for negligence under Minnesota law, Strei must prove (1) that Defendants had a legal duty of care; (2) that Defendants breached that duty; (3) that the breach of that duty was the proximate cause of Strei's harm; and (4) damage. *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820-21 (8th Cir. 2010); *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011).  In support of his claim for negligence, Strei alleges generally that Defendants "breached their duty to exercise a reasonable standard of care in dealing with Plaintiff."  (Am. Compl. ¶ 39.)  In his memorandum in opposition to Defendants' motions for summary judgment, Strei argues that summary judgment as to his negligence claim should be denied because "Defendant's actions cannot be legally justified."  (Pl.'s Mem. in Opp. at 41.)  As explained elsewhere in this Order, Strei has not identified any illegal actions of any of the Defendants.  Therefore, to the extent Strei's negligence claim is derivative of his other claims, the Court finds that summary judgment is appropriate.  Additionally Strei has presented no evidence of an independent legal duty of care that Defendants breached in their interactions with him, so the Court finds that summary judgment in Defendants' favor is appropriate.  *See Jackson v. Metro. Council HRA Mgmt. Ass'n*, Civ. No. 10-2370, 2012 WL 4470438, at *6 (D. Minn. Sept. 27, 2012) ("[I]n order to defeat summary judgment, Jackson must do more than make conclusory allegations.  In asserting her negligence claim, Jackson 'rests on the bare assertions' that the Metro HRA was negligent in exercising administrative duties without offering any supportive evidence or a clear definition of those duties.

Accordingly, Jackson has failed to establish the existence of a duty of care or a breach of that duty." (internal citations omitted)).

### L.     Civil Conspiracy

"'Accurately speaking, there is no such thing as a civil action for conspiracy'" under Minnesota law. *GSS Holdings, Inc. v. Greenstein*, No. A07-1573, 2008 WL 4133384, at *2 (Minn. Ct. App. Sept. 9, 2008) (quoting *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 825 (Minn. 1950)). "[A] civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability, and thus such a claim is dependent upon a valid underlying tort claim." *MathStar, Inc. v. Tiberious Capital II, LLC*, 712 F. Supp. 2d 870, 885 (D. Minn. 2010) (internal quotation marks omitted); *see also Bank of Montreal v. Avalon Capital Grp. Inc.*, 743 F. Supp. 2d 1021, 1033 (D. Minn. 2010). Because the Court finds that summary judgment in Defendants' favor is appropriate on all of Strei's tort claims, the Court will also grant Defendants' motions for summary judgment with respect to the conspiracy claim.

## III.    PLAINTIFF'S MOTION TO DISMISS HENSEN'S COUNTERCLAIMS

Strei moves to dismiss Hensen's counterclaim – alleging various grievances related to the circumstances of this action – for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6).[18]   In the alternative, Strei requests summary judgment on Hensen's counterclaim.

In deciding a motion on the pleadings, the Court considers all facts alleged in the complaint as true and views the pleadings in the light most favorable to the nonmoving party.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion on the pleadings, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint does not need to contain "detailed factual allegations."  *Twombly*, 550 U.S. at 555.

Strei's motion to dismiss is based upon his contention that Hensen's counterclaim "does not identify any specific legal cause of action against Plaintiff."  (Mem. in Supp. of Mot. for Dismissal or Summ. J. at 1, Aug. 1, 2013, Docket No. 85.)  Hensen's

---

[18] The Court notes that Strei's motion to dismiss under Rule 12(b)(6) is technically inappropriate, as such motions cannot be brought after a responsive pleading has been filed.  *See EEOC v. Nw. Airlines, Inc.*, 216 F. Supp. 2d 935, 937 (D. Minn. 2002); *see also* Fed. R. Civ. P. 12(b).  Here, Strei filed an answer to Hensen's counterclaim more than a year before bringing the present motion.  (*See* Reply to Countercl., June 10, 2012, Docket No. 8; Mot. for Summ. J. or Dismissal of Countercl., Aug. 1, 2013, Docket No. 84.)  After an answer has been filed a motion to dismiss must be brought as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  "This distinction is purely formal, though, as the Court reviews a Rule 12(c) motion under the same standard that governs 12(b)(6) motions."  *Nw. Airlines, Inc.*, 216 F. Supp. 2d at 937 (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)).

counterclaim alleges that "[d]espite the fact that the plaintiff deeded to Ms. Hensen all of his right, title, and interest in the lake property in May of 2010, the plaintiff has continued to claim that he has a right to use the property without Ms. Hensen's permission" and has "continuously trespass[ed] on Ms. Hensen's property." (Countercl. ¶¶ 40, 43.)  Although this pleading is certainly not a model of clarity, the Court finds that the counterclaim adequately identifies trespass as the grounds of her entitlement to relief.  As explained above, a cause of action for trespass is "committed where a plaintiff has the 'right of possession' to the land at issue and there is a wrongful and unlawful entry upon such possession by defendant."  *Johnson*, 817 N.W.2d at 701 (internal quotation marks omitted).  In her counterclaim Hensen alleges that she was the owner of the Property as a result of the quitclaim deed and also alleges that Strei entered the Property and continued to reside at the Cabin without her permission.  Accepting these facts as true, the counterclaim states a plausible claim for relief on its face.[19]

---

[19] The Court notes that trespass is the only claim properly pled by Hensen's counterclaim. Hensen's counterclaim contains various other grievances against Strei, such as the fact that he did not initiate any proceeding to establish that he had a right to use or possess the Property without Hensen's permission. (Countercl. ¶ 41.)  Hensen has not, however, identified any legal relief she would be entitled to based upon Strei's failure to bring a quiet title action. Additionally, Hensen claims that Strei's claims "that he had an ownership in the Property as of November 5, 2011, and the actions undertaken by him to pursue those claims are frivolous." (*Id.* ¶ 44.)  Hensen therefore seeks to recover attorneys' fees she has incurred in defending against the present lawsuit.  The Court denies Hensen's request for attorneys' fees as many of Strei's claims in this action do not constitute pursuit of his claim that he had an ownership interest in the Property.  In other words, Strei is not arguing in this lawsuit that he owns the Property.  Instead, the majority of Strei's claims are based upon his argument that he should not have been arrested for criminal trespass because he had a bona fide, if mistaken, claim of right to be on the Property. Therefore, the Court concludes that although Strei's claims have failed to survive summary judgment, the lawsuit was not frivolous such that an award of attorneys' fees is appropriate.

Strei argues in the alternative that summary judgment on Hensen's trespass claim is appropriate because the undisputed facts show that Strei had a "good faith belief in his right to remain on the property." (Mem. in Supp. of Mot. for Dismissal or Summ. J. at 6.) Strei contends that "[i]t was not legally established that Strei had no right to the property until Hensen won her quiet title action in November, 2012 – a year after Strei had left the property" and therefore Hensen cannot assert a trespass action based on Strei's occupancy of the Property during the time period in question. (*Id.* at 6-7.)

Strei is liable for trespass if his entry onto the Property was "wrongful and unlawful." *All Am. Foods, Inc.*, 266 N.W.2d at 705. Strei has not presented evidence, much less undisputed evidence, that his entry onto the Property was rightful or lawful. Nor has Strei presented any evidence that in the fall of 2011 he was a part owner of the Property.[20] Instead, Strei claims that his mistaken belief that he had a right to be on the Property was held in good faith, and therefore cannot form the basis of a trespass claim. But "because trespass is an intentional tort, reasonableness on the part of the defendant is not a defense to trespass liability." *Johnson*, 817 N.W.2d at 701 (citing *H. Christiansen & Sons, Inc. v. City of Duluth*, 31 N.W.2d 270, 273-74 (Minn. 1948)). Because Strei has not presented evidence establishing that he is entitled to summary judgment on Hensen's claim for trespass, the Court will deny Strei's motion.

---

[20] Strei has provided no legal authority to support his suggestion that a quiet title action is a necessary prerequisite to maintaining a cause of action for trespass. In other words, Hensen's ownership of and right to possess the Property did not come into existence only after the quiet title action was resolved. The quiet title action found that based on the documents and evidence, Hensen was the owner of the Property. Strei has not argued that the documents and evidence supporting Hensen's quiet title claim were different or did not exist in November 2011.

This case will be placed on the Court's next available trial calendar.  Remaining to be resolved is Hensen's counterclaim against Strei for trespass.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Defendants Hensen and Merz's Motion for Summary Judgment [Docket No. 65] is **GRANTED**.

2.   Defendants Becker County, Blaine, and Miller's Motion for Summary Judgment [Docket No. 71] is **GRANTED**.

3.   Defendants Deegan and McArthur's Motion to Dismiss [Docket No. 76] is **GRANTED**.

4.   Defendants Deegan and McArthur's Joint Motion for Summary Judgment [Docket No. 78] is **GRANTED**.

5.   All of the claims alleged in Plaintiff's Amended Complaint [Docket No. 38] are **DISMISSED with prejudice**.

6.   Plaintiff's Motion for Dismissal or Summary Judgment of Counterclaims [Docket No. 84] is **DENIED**.

DATED:  February 12, 2014          _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                     United States District Judge